In the Matter of the alleged incompetency of Harriet Margaret Roots.

Harriet Margaret ROOTS and Thomas J. Nurnberger, Appellants,

v.

Robert L. REID, Jr., Respondent.

Nos. 28264, 28265.

Missouri Court of Appeals, Kansas City District.

Aug. 8, 1977.

Dale, Flynn, Bauman & Liles, Joseph L. Flynn, St. Joseph, for Roots.

Grace S. Day, St. Joseph, for Nurnberger.

Michael Paul Harris, St. Joseph, for respondent.

Before DIXON, P. J., and WASSERSTROM and TURNAGE, JJ.

TURNAGE, Judge.

This action began in the probate court with an application filed by Robert L. Reid,

Jr., the public administrator, and an application by Thomas J. Nurnberger, a nephew, in which each requested to be appointed the guardian of the person and estate of Harriet Margaret Roots. The probate court appointed the public administrator.

On appeal to the circuit court, and after a full hearing in that court, the public administrator was appointed as guardian of both the person and estate of Mrs. Roots. This appeal is by Mrs. Roots and Thomas Nurnberger.

Roots and Nurnberger contend in this court the circuit court erred in appointing the public administrator when Nurnberger as a blood relative was fully qualified to serve as guardian. Reversed.

At the hearing in the circuit court a psychiatrist who had treated Mrs. Roots testified she was psychotic and was suffering from cerebral arteriosclerosis. He stated in his opinion she was not able to handle her affairs and was in need of a guardian. The court made a finding that Mrs. Roots was incompetent. That finding is not brought into question on this appeal and will not be further noticed.

The only question on this appeal is the propriety of the appointment of the public administrator as guardian of the person and estate of Mrs. Roots in preference to the appointment of Nurnberger, her nephew.

In the circuit court hearing, the public administrator testified he was contacted by the probate judge about Mrs. Roots after the St. Joseph Police Department had contacted the judge about a number of disturbance calls related to the Roots' home. At that time Mr. Roots was alive.

As result of the knowledge acquired from the probate judge, the public administrator filed an application for the involuntary hospitalization of Mrs. Roots. This application was later dismissed, but in the meantime she had been admitted to the state hospital in St. Joseph. Outside of making a visit to the Roots' home after Mrs. Roots left the state hospital, the public administrator had little, if any, contact with Mrs. Roots and was generally unfamiliar with the nature and extent of her property.

Thomas Nurnberger stated he was a nephew of Mrs. Roots by virtue of his mother and Mrs. Roots being sisters. He stated he lived in St. Louis where he was a school teacher. He held both a bachelors and masters degree in education and was working on his doctorate.

Living with Nurnberger in St. Louis was another sister of Mrs. Roots, Jane Pinder. Nurnberger was single and his Aunt Jane was apparently a single lady who had worked as an R.N. in St. Joseph but had retired. On her retirement she went to live with Nurnberger and helped with the household duties there.

When Nurnberger learned Mrs. Roots had been placed in the state hospital, he immediately went to St. Joseph. He talked with her private physician and with the psychiatrist in charge of her case in the state hospital and obtained the approval for her release. Subsequently, Nurnberger took Mrs. Roots to St. Louis to make her home with him and her sister, Jane.

When Nurnberger returned to St. Joseph for the hearing in the circuit court, the psychiatrist again examined Mrs. Roots and testified her psychotic condition had largely disappeared, but her arteriosclerosis continued as a permanent condition.

Nurnberger lives in a four-bedroom, large home, on a half-acre tract in St. Louis. He stated he owned his home and owned and managed a stock and bond portfolio. He had returned to St. Joseph on occasion when he learned of any need on the part of Mrs. Roots or her husband, and had given his name to the police department to be contacted in case there was any need.

Shortly after Nurnberger obtained Mrs. Roots' release from the state hospital, Mr. Roots died. Apparently Mr. Roots had had a drinking problem, but the only specific complaints about which Nurnberger had been informed related to some disturbance about a shotgun.

Nurnberger stated in his early days he had lived about ten years with Mr. and Mrs. Roots while he attended school in St. Jo-

seph. He was a graduate of a high school in that city and had attended junior college there.

Nurnberger told the court in detail of the property and assets belonging to Mrs. Roots, consisting of a savings account in St. Joseph and a bank and savings account in St. Louis which had been transferred from a St. Joseph bank. In addition, Mrs. Roots owned an apartment house and a home in St. Joseph; some real estate near Sugar Lake and a house in Maryville. Nurnberger also stated Mr. Roots had a bank account and savings account at his death and Mrs. Roots was the owner of these because the Roots had no children.

Nurnberger stated Mrs. Roots had lived in his home from May, 1975, until the hearing in circuit court in August. He stated she had about $250 per month income from social security but this went into her bank account. He stated he was furnishing all of her food, lodging and other needs without any payment. He had assisted her in having a new roof put on her home and in the payment of various bills.

Mrs. Roots testified before the circuit court and except for an inability to fully describe all of her assets, displayed an understanding of the questions propounded to her and gave coherent answers. She stated without equivocation she desired Nurnberger to be her guardian.

Jane Pinder also testified and told of the kind and considerate treatment which Nurnberger gave to her and to Mrs. Roots. She stated she was able to get around and was capable of taking care of her sister and since her sister had been in St. Louis her general health had improved and she had gained about 20 pounds from a rundown condition. She said Nurnberger took his aunts out to eat frequently and to visit friends. She stated the situation in the Nurnberger home with her and her sister was highly satisfactory and desirable.

In addition, a niece, another nephew, and another sister of Mrs. Roots testified. They all stated they were familiar with the situation of both Mrs. Roots and Nurnberger and his home in St. Louis. All stated they favored the appointment of Nurnberger as guardian of both the person and estate of Mrs. Roots.

In addition, a wife of one of Nurnberger's fellow teachers from St. Louis testified concerning her acquaintanceship with the good care and attention which Nurnberger gave his aunts.

The circuit court made informal findings of fact which were later amended on motion of Mrs. Roots and Nurnberger. The court appointed the public administrator because he found (1) Nurnberger demonstrated no ability in the business line; (2) he is a school teacher in St. Louis and in no condition to check into affairs here (St. Joseph) and to locate property of his aunt; and (3) he is primarily interested in her money because he took some money out of a bank in St. Joseph and put it in a bank in St. Louis.

Section 475.055, RSMo1969, sets out the qualifications of guardians. This Section provides any natural person of full age may be appointed guardian with certain exceptions not applicable here. There is no question but that Nurnberger is fully qualified to be appointed guardian under this Section.

Section 473.743, RSMo1969, provides the public administrator shall take into his charge and custody the person and/or estate of all insane persons in his county who have no legal guardian and no one competent to take charge of the estate or to act as guardian who will qualify.

■ Because Section 475.055 states qualifications only in general terms relating to age and residency, there is no definitive guide in the statutory law of this state concerning precise qualifications of guardians. In this situation a determination of whether or not there is anyone besides the public administrator who is qualified to act as guardian rests in the sound discretion of the court confronted with that question.

In this case a factor to be considered by the court in the exercise of its discretion in the appointment of a guardian is the relationship between Mrs. Roots and Nurnber-

ger. Section 475.055 does not give any preference to a blood relative to be appointed a guardian of either the person or estate of an incompetent. However, the Supreme Court has held that in the case of a minor, the common law preference to be given a relative over a stranger, when all other things are equal, would be applied absent any statute abrogating such rule. *In re Brinckwirth's Estate,* 268 Mo. 86, 186 S.W. 1048 (1916). In that case the court ordered the public administrator removed as guardian of minor children and held that all other qualifications being equal and no specific reason existing·to the contrary, the nearest relatives of the minors were entitled to preference in the selection of a curator. The court quoted with approval from American and English encyclopedias of the law which stated the common law rule in part with reference to the appointment of guardians: " 'Other things being equal, however, a relative will always be preferred to a stranger.' " 186 S.W. 1052.

Like Missouri, New York does not have a statutory preference of relatives over strangers. However, the court in *In re West,* 13 A.D.2d 599, 212 N.Y.S.2d 832, 834[2, 3] (1961) adopted a test to be applied in the contest between a relative and a stranger. The court stated:

> While the usual practice is to appoint a next of kin or other close blood relative or the nominee thereof, the court is not bound to do so. There is no positive rule of law compelling the court to appoint a next of kin nor any absolute subordination of strangers to relatives. The paramount consideration is the best interests and welfare of the incompetent so that the court may, in the exercise of discretion approve a stranger as the sole committee, where there is a valid objection to the close relative or nominee. Appointment of a stranger is in the best interests of the incompetent where the record discloses dissension in the family, the adverse interests of the relatives and the incompetent, the lack of business ability of the relative or any other reason whereby a stranger would best serve the interest of the incompetent.

While the court in *Brinckwirth* applied the preference to relatives in selecting a guardian for a minor, this court perceives no reason why the same rule should not be applied to incompetents. The same reasoning applies. Adding to this is the reasoning of the court in *West.* This court finds the statement in *West* to be persuasive and fully consistent with the holding in *Brinckwirth.* Therefore, this court adopts the rule quoted above in *West* that a relative should be appointed over a stranger as a guardian unless the record discloses dissension in the family, the adverse interest of the relatives and the incompetent, the lack of business ability of the relative, or any other reason whereby a stranger would best serve the interest of the incompetent.

The trial court actually applied much the same test as adopted herein, but the findings made by the court do not find support in the evidence. The court found Nurnberger demonstrated no ability in the business line, but the only evidence in the case concerning his business ability was that he managed his own stock and bond portfolio, owned his real estate, assisted Mrs. Roots in her business affairs including the replacement of a roof on her home. There was no evidence whatever to indicate any lack of business ability on the part of Nurnberger. In view of his advanced degrees and demonstrated ability, such finding is unsupported in the evidence.

The next finding of the court that Nurnberger was a school teacher in St. Louis and in no condition to check into the affairs in St. Joseph and locate Mrs. Roots' property is likewise unsupported by the evidence. The only evidence bearing on this question indicated Nurnberger was thoroughly familiar with Mrs. Roots' assets and, in fact, the only evidence concerning her assets came from him and not the public administrator. He further demonstrated his ability to take care of matters in St. Joseph.

The last ground assigned by the court for its appointment of the public administrator was that Nurnberger was primarily interested in Mrs. Roots' money because he took

58

some money out of a bank in St. Joseph and put it in a bank in St. Louis. On this finding it may be said there was absolutely no evidence that Nurnberger had in any respect misapplied or misappropriated any funds belonging to Mrs. Roots. The uncontradicted evidence was that he was supporting her in his own home and was not even taking the social security check which she received each month to apply to her own expenses. The transfer of some money from a bank account in St. Joseph to one in St. Louis was made for the convenience of having the account located close to the physical presence of Mrs. Roots. Although the account opened in St. Louis had Nurnberger's name added to Mrs. Roots' it also had Jane Pinder's name added. Further, Nurnberger made full disclosure of the assets of the account and the amount contained therein, and, as guardian, would be fully responsible to account therefor.

The findings of the court do not find support in the evidence and under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc. 1976), the judgment resulting therefrom cannot stand.

█ In accordance with the rule approved in *Brinckwirth* and *West* and adopted by this court, Nurnberger is entitled to preference in the appointment of a guardian unless one of the enumerated exceptions exist. The evidence does not show the existence of any of these exceptions and in addition shows Nurnberger to be fully qualified to be appointed.

The judgment appointing the public administrator as the guardian of the person and estate of Harriet Margaret Roots is reversed and the court is directed to enter a judgment appointing Thomas J. Nurnberger as the guardian of the person and estate of Harriet Margaret Roots.

All concur.