**In the Matter of the Alleged Incompetency of Lawrence H. TEPEN.**

**Eleanor J. TEPEN, Appellant,**

v.

**Emil M. TEPEN et al., Respondents.**

**No. 41739.**

Missouri Court of Appeals,
Eastern District,
Division Three.

May 20, 1980.

Marion F. Wasinger, John B. Morthland, Wasinger, Parham & Morthland, Hannibal, for appellant.

James Millan, McIlroy and Millan, Bowling Green, for respondents.

REINHARD, Judge.

Eleanor Tepen appeals from an order of the Probate Division of the Circuit Court of Pike County appointing Charles Runser guardian of the person and estate of her husband, Lawrence H. Tepen.

Lawrence and Eleanor Tepen were married in 1965. Two children were born of the marriage. In November, 1969, Lawrence underwent brain surgery for the removal of a tumor and has been critically ill on numerous occasions since that time.

Lawrence and Eleanor lived together until it became necessary to place him in the Moore-Pike County Nursing Home on November 28, 1978. Eleanor has apparently managed the couple's financial affairs since the date of their marriage. She was a beautician at the time she and Lawrence married. Later, she became a real estate salesperson. At the present time, she sells real estate in Bowling Green.

Dr. Griffen, Lawrence's treating physician, testified that Lawrence suffered periods of hallucination, agitation, and restlessness. He stated that these conditions were currently being controlled by the use of medication. He further testified that Lawrence was incapable of taking care of himself or his business and that his condition would probably worsen. (All parties agree that Lawrence cannot be taken care of in the home and there appears to be no dispute as to his care.)

Lawrence and Eleanor own one-half interest in a farm in Pike County as tenants by the entirety. Their house, automobile, and truck are held in the same manner. It appears that they have only one bank account and that it is joint. They own stock in a bowling alley which is under contract to be sold. The stock is jointly held with the purchaser's obligation being joint. After the onset of Lawrence's illness, his farm equipment, machinery, and livestock were sold to his two brothers. The brothers tendered two promissory notes for these items, with Lawrence being the payee on one note and Eleanor being the payee on the other. Lawrence owns individually a $3,000.00 MFA debenture which is payable on death to his wife and two children. Eleanor also owns a MFA debenture. In Lawrence's name is one share of Rural Fire Equipment stock and one share of Farmers Equity Exchange.

Lawrence has been declared totally disabled and he and Eleanor receive social security benefits. Benefits are also received for the children. The social security payments, Eleanor's income from her real estate sales, and income and returned principal from their joint and separate investments were deposited in their joint bank account. Apparently, all payments of any kind involving the family were paid out of the account.[1]

Eleanor withdrew funds from the joint bank account to make investments in savings certificates with Citizens Savings Association. The certificates are in the amounts and dates as follows: $10,000 on January 23, 1979; $8,000 on December 15, 1978; $4,000 on December 15, 1978; $5,000 on September 19, 1977; $10,000 on April 20, 1979. These certificates are payable to Eleanor and the two children. She testified that she created these investments for tax planning purposes and because Lawrence was in a rest home.

On April 20, 1979, the parents and siblings of Lawrence Tepen filed a petition for Appointment of Guardian of the person and estate of Lawrence H. Tepen. They alleged that he was incompetent, that he owned property either individually or jointly with his wife, and "that title to this property is being transferred and title to the personalty is being changed . . . ." The petition further alleged that one of the petitioners, Fred J. Tepen, had sued Lawrence and Eleanor in a matter involving title to real estate. Petitioners suggested that the court consider the appointment of Charles Runser as guardian. Eleanor then filed a petition requesting that she be appointed guardian.[2] After a hearing, recognizing that a spouse is entitled to preference in the appointment of a guardian, the court appointed Runser but included in its order a statement that after the filing of an inventory, it would consider the appointment of Eleanor if the "obvious conflict" were removed.[3]

---

1. The record does not reveal the value of any of Lawrence's and Eleanor's assets other than the debenture. Neither does it reveal the specifics of the deposits nor the withdrawals.

2. Eleanor had previously filed a petition for the appointment of a guardian for Lawrence which she dismissed at the request of some of his family.

3. The order stated:

> On May 17, 1979, evidence was adduced by all interested parties in the matter of the alleged incompetency of Lawrence H. Tepen. After considering all of the evidence, the Court finds that Lawrence H. Tepen is an incompetent within the meaning of the law and is in need of a guardian over his person and estate. Even though the law gives preference to a spouse, exceptions are frequently made and 'appointment of a stranger is in the best interest of the incompetent where the record discloses dissention in the family and

On appeal, Eleanor contends that the court erred in appointing Charles Runser instead of her as guardian. She contends that she was entitled to a preference in being appointed guardian of Lawrence. She further argues that she possesses the necessary business ability to be a guardian, that she is on good terms with her husband, and that she has no adverse interests to those of Lawrence. Lawrence's family members contend that the appointment of Runser was proper because there was a conflict of interest resulting from the transfer of funds out of the joint bank account.

█ In Missouri, "a relative should be appointed over a stranger as a guardian unless the record discloses dissension in the family, the adverse interest of the relatives and the incompetent, the lack of business ability of the relative, or any other reason whereby a stranger would best serve the interest of the incompetent." *Roots v. Reid*, 555 S.W.2d 54, 57 (Mo.App.1977).

In its order, the trial court recognized the rule announced in *Roots* giving the spouse the preference in the appointment of a guardian. The court did not specifically state why it did not appoint Eleanor. (No specific findings of fact or conclusions of law were requested or given.) However, it is apparent, from a reading of the transcript and the court's order, that the reason was Eleanor's purchase of the certificates from the joint bank account. We find nothing else in the record that should have precluded her appointment.

█ The law permits a joint tenant to withdraw funds from a properly established joint bank account. Section 362.470 RSMo. 1978. *See also Matter of Estate of Thompson*, 539 S.W.2d 650 (Mo.App.1976). It may have been perfectly legal and in Eleanor's best interests to purchase certificates in her and the children's name without including Lawrence's name. Such action may not,

however, have been in the best interest of Lawrence. The court had before it evidence that most of these certificates of deposit had been purchased within four and one-half months of the filing of the petition for the appointment of guardian; one on the date of its filing. The court apparently believed that under these circumstances it was in the *best interest of the ward* to appoint a stranger during the period the ward's assets were being accumulated and inventoried.

█ We defer to the trial court's judgment and find no abuse of discretion in the failure to *initially* appoint the spouse. The court's indication that it would consider the appointment of Eleanor upon proper application after the filing of the inventory is both logical and reasonable.

Eleanor also contends that Runser has a conflict of interest because his appointment was requested by Fred J. Tepen who has a lawsuit pending against her and her husband. We find no evidence in the record which would indicate a conflict of interest between Runser and Lawrence. The fact that one of the persons suggesting a guardian has a conflict with the ward does not create a conflict between the suggested guardian and the ward. According to the testimony, Runser was a friend of both Lawrence and Eleanor. We find nothing in the record to disqualify him from his appointment.

Applying the standard of review announced in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), we affirm.

Judgment affirmed.

DOWD, P. J., and CRIST, J., concur.

---

the adverse interests of the relatives and the incompetent, . . . or any other reason whereby a stranger would serve the best interest of the incompetent. *Roots vs. [v.] Reid* 555 S.W.2d 54L.C.57'. Accordingly, Charles Runser is appointed guardian of the person and curator of the estate of the incompetent

and directed to give bond in the amount of $5,000.00 pending the filing of the inventory. Upon the filing of the inventory, the Court would entertain a motion of the spouse to be successor guardian if the obvious conflict of interest of the spouse with the incompetent is removed.