In the Matter of Carolyn Storz
BROWN, Incompetent,

Frank V. DiMaggio, Respondent,

v.

Effie Belle STORZ and Edith
Sylvester, Appellants,

Larry Craig Brown, Jr.,
Cross-Appellant.

No. 50033.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 15, 1986.

Motion for Rehearing and/or Transfer
Denied May 13, 1986.

Application to Transfer Denied
June 17, 1986.

Laurence D. Mass, Clayton, Gregory D. O'Shea, James E. Hullverson, St. Louis, for appellants.

Herbert A. Kasten, Jr., St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Two petitions were filed in the probate court to appoint a guardian of the person and conservator of the estate of Carolyn Storz Brown, a twenty-one year old woman. One petition was filed jointly by Effie Belle Storz, Carolyn's mother, and Edith Sylvester, Carolyn's sister, requesting appointment of Mrs. Storz as guardian and conservator. A cross-petition was filed by Larry Craig Brown, Jr., Carolyn's husband, requesting that he be appointed guardian and conservator. The court held a hearing on the petitions, at which Carolyn was represented by Frank V. DiMaggio, her guardian ad litem. After the hearing, the court issued an order declaring Carolyn incompetent and appointing Mr. DiMaggio as her guardian and conservator. Petitioners, Mrs. Storz and Mrs. Sylvester, and cross-petitioner, Craig Brown, have each appealed from that order.[1] We affirm Mr. DiMaggio's appointment as conservator, but hold that Mrs. Storz should have been appointed guardian.

Because this is a court-tried case, we must affirm the probate court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). None of the parties requested that the probate court make specific findings of fact or conclusions of law, and only those required by statute were issued. All other factual issues are, therefore, deemed to have been found in accordance with the result reached, and the judgment must be affirmed under any reasonable theory supported by the evidence. *Sanders v. DeLoire Corp.*, 634 S.W.2d 225, 227 (Mo.App. 1982). This court must accept as true all evidence favorable to the prevailing party, together with all inferences reasonably deducible therefrom, and disregard any contradictory evidence. *Montrose Savings Bank v. Landers*, 675 S.W.2d 668, 669 (Mo. App.1984).

Carolyn entered St. Luke's Hospital West on September 30, 1984, to give birth

---

1. The notices of appeal filed in this action have apparently created some confusion about how the parties should be identified and aligned. Mr. DiMaggio has filed a motion to intervene, requesting that he be designated respondent, that petitioners, Mrs. Storz and Mrs. Sylvester, be designated appellants, and that cross-petitioner, Craig Brown, be designated cross-appellant. That motion is hereby granted.

Cross-petitioner's motion to strike respondent's brief for failure to comply with Rules 84.04(d) and 84.04(h) is hereby denied. Petitioners' motion to tax costs against cross-petitioner is also denied.

to a child. Following delivery of the child, Carolyn developed an infection and became comatose. She regained consciousness about two weeks later, but suffered severe brain damage as a result of the coma. She remained at St. Luke's until March 11, 1985, when she was transferred to Barnes Hospital. She remained at Barnes through the hearing in the probate court on March 25, 1985. The baby currently lives with Carolyn's husband, Craig Brown.

At the hearing, Mrs. Sylvester testified that she has visited Carolyn regularly since her hospitalization. She testified that immediately after the coma Carolyn was almost completely incapacitated and subject to violent seizures. In the succeeding months Carolyn has regained substantial self-control, but because of her diminished mental capacity she nevertheless requires constant supervision in order to meet her basic needs for food, clothing and shelter. She currently requires several medications to control her seizures, and Mrs. Sylvester testified that Carolyn could not identify or administer these on her own. Carolyn also has a colostomy, and requires assistance in changing the colostomy bag two or three times each day.

Mrs. Sylvester further testified that she lives in a house in Maplewood, Missouri, with her husband and her mother, Mrs. Storz. She testified that she and Mrs. Storz have made plans to care for Carolyn and her baby if Carolyn is released from the hospital. Despite Carolyn's physical and emotional problems, Mrs. Sylvester believes that adequate care could be provided in a home environment.

Mrs. Storz testified that she has visited Carolyn virtually every day since her hospitalization. She testified that she has seen Carolyn and the baby together, and feels that the baby's presence is good for Carolyn. She testified that Craig Brown's mother once indicated to her that Carolyn might be moved from Barnes Hospital to a state institution. Mrs. Storz objected to any such institutionalization, and it was this objection that prompted her application for guardianship. She agreed with Mrs.

Sylvester that adequate care could be provided for Carolyn in a home environment, although Carolyn requires constant supervision.

Craig Brown testified that he is twenty-one years old, and has been married to Carolyn since March 3, 1984, approximately seven months before the child was born. He testified that he lives with the baby in a trailer in Bloomsdale, Missouri. His parents live in a four-bedroom home located on the same property as the trailer. He testified that he does not want to institutionalize Carolyn, and that he and his parents can provide adequate supervision for her if she is released from the hospital. He said that he would allow Carolyn's family to visit with Carolyn and the baby, but would not allow the baby to live with Carolyn if Carolyn lived apart from him.

Craig further testified that he has been an alcoholic for at least two years, and has twice sought treatment at an alcohol rehabilitation center. He testified about an incident that occurred approximately two weeks prior to the hearing, when he had been drinking and tried to get into St. Luke's to see Carolyn at two o'clock in the morning. He was eventually escorted out of the hospital by a security guard, and had to be handcuffed and taken away in a police car.

Three of the nurses who have attended to Carolyn during her hospitalization also testified at the hearing. They testified that Mrs. Storz and Craig Brown have visited Carolyn frequently since her coma. They further testified that Carolyn generally reacts favorably to her mother's visits, but frequently argues with Craig and usually gets upset when he visits. One of the nurses, Carolyn Keel, described an incident when Carolyn was upset because Craig said in her presence that he and Carolyn's mother did not like each other. Each of the nurses testified that they heard Craig mention a potential lawsuit against St. Luke's. One of the nurses, Rita Brown, testified that Craig said he expected to get money from the lawsuit. She also stated that Craig and his father had

offered to pay her to testify on their behalf.

Carolyn's sister, Debra Katroba, testified that she was at the hospital once when Craig and Mrs. Storz argued about whether or not Carolyn should be institutionalized. Mrs. Storz objected to any institutionalization, and a heated exchange took place in Carolyn's presence.

Portions of the deposition of a Dr. Nakra were read into evidence at the hearing. Dr. Nakra stated that as of March 14, 1985, approximately eleven days prior to the hearing, Carolyn was incapable of stating a preference about where she wanted to live.

On April 10, 1985, the probate court issued an order finding Carolyn totally incapacitated, both mentally and physically. The order provided that her incapacitation rendered her incapable of meeting all essential requirements for food, clothing and shelter, and incapable of managing her financial resources. The court further found that Carolyn required a supervised living situation, and that the least restrictive environment for such supervision "would be in a home care setting, but supervision could be given by a family member or members...." Without further explanation, the court appointed Carolyn's guardian ad litem, Mr. DiMaggio, to act as the guardian of Carolyn's person and the conservator of her estate. Petitioners, Mrs. Storz and Mrs. Sylvester, and cross-petitioner, Craig Brown, appeal from that order.

■ We first consider the two points raised on appeal by petitioners. Their first point on appeal contains three subpoints. In their first subpoint, petitioners argue that the court applied an improper legal standard because it failed to give preference to family members in appointing a guardian and conservator.

Section 475.050(3) RSMo Cum.Supp. 1984[2] provides, in pertinent part:

> Before appointing any other person ... as guardian of an incapacitated person, or conservator of a disabled person, the court shall consider the suitability of

appointing any of the following persons who appear to be willing to serve:

> ....

> (3) The spouse, parents, adult children, adult brothers and sisters and other close adult relatives of the incapacitated or disabled person and any eligible person....

Prior to 1983, when this section was adopted, the probate code contained no indication of any preference to be given to blood relatives in appointing a guardian or conservator for an incapacitated person. The Missouri courts had, however, interpreted the code to include such a preference. In *Roots v. Reid*, 555 S.W.2d 54, 57 (Mo.App.1977), the court held that

> a relative should be appointed over a stranger as a guardian unless the record discloses dissension in the family, the adverse interest of the relatives and the incompetent, the lack of business ability of the relative, or any other reason whereby a stranger would best serve the interest of the incompetent.

*See also In re Tepen*, 599 S.W.2d 533, 535 (Mo.App.1980). The decision whether to appoint a relative or some third person remains within the sound discretion of the trial court. *Roots*, 555 S.W.2d at 56.

Petitioners argue that the legislature, by adding section 475.050(3) to the probate code in 1983, created an *absolute* preference in favor of blood relatives, a preference not subject to the exceptions set forth in *Roots*. We disagree. Section 475.050(3) requires the court to consider the suitability of appointing not only blood relatives but "any eligible person." Although the specification of blood relatives indicates the legislature's intent to maintain a preference in their favor, that preference remains subject to the exceptions stated in *Roots*.

■ In their second subpoint, petitioners argue that Mr. DiMaggio's appointment as guardian and conservator was unlawful because no petition was filed requesting his appointment. The only petitions filed were the joint petition by Mrs. Storz and Mrs.

---

**2.** All subsequent statutory references refer to RSMo Cum.Supp.1984.

Sylvester, and the cross-petition by Craig Brown.

The Missouri probate code provides that any person may file a petition for the appointment of himself or some other qualified person as the guardian or conservator of an incapacitated person. Sections 475.-060, 475.061.1. In *In re Dugan*, 309 S.W.2d 145, 148 (Mo.App.1957), the court held that the filing of such a petition is jurisdictional. The court explained that the power to appoint guardians is purely statutory, and that the probate court does not acquire jurisdiction to make such an appointment unless an application is made in accordance with the statutes.

The *Dugan* court did not hold, however, as petitioners suggest, that a person cannot be appointed guardian or conservator unless he has filed a proper petition. Rather, the court merely held that in the absence of a properly filed petition *by some party*, the probate court did not have jurisdiction and could not make any appointment. Once the probate court's jurisdiction has been invoked by a properly filed petition, however, it then has authority to appoint any person who is qualified to act as guardian or conservator. *See* sections 475.050, 475.055.

In the instant case, two petitions were properly filed in the probate court. That court thus had jurisdiction to appoint any qualified person. Mr. DiMaggio was a qualified person under section 475.055. Accordingly, this subpoint is denied.

■ In their third subpoint, petitioners argue that Mr. DiMaggio's appointment violates their right to due process because they had no notice that the court might appoint someone other than Mrs. Storz or Craig Brown. Petitioners contend that they first became aware of the possibility that Mr. DiMaggio might be appointed when, during closing arguments at the hearing, he offered to act as guardian and conservator.

Petitioners' argument fails because section 475.050 authorizes the court to appoint "any other person" guardian or conservator after considering the suitability of blood relatives and "any eligible person." This section thus provides notice that the court may, in the exercise of its discretion, appoint some third party as guardian and conservator. If the petitioners in a particular case question the qualifications of the appointed party, they can raise this issue in a post-trial motion. We will not limit the probate court's discretion in making this important decision by requiring it to identify—prior to the hearing—what persons may be "eligible" for appointment. Accordingly, this subpoint is denied.

■ In their second point on appeal, petitioners argue that Mr. DiMaggio's appointment as guardian and conservator was against the weight of the evidence, and that Mrs. Storz should have been appointed. As discussed above, Missouri law provides that a third party may be appointed over a relative only if the evidence establishes dissension in the family, the adverse interests of the relatives and the incapacitated person, or the relative's lack of business ability.

We first consider whether the evidence supported Mr. DiMaggio's appointment as guardian of Carolyn's person. The only conceivable basis for this appointment was alleged dissension in the family. The record does not, however, indicate that any such dissension currently exists. At one time Mrs. Storz and Craig Brown's family apparently disagreed about whether Carolyn should be institutionalized, but at the hearing all parties agreed that institutionalization is not in Carolyn's best interests. No other basis for a finding of dissension in the family exists, and we thus hold that the evidence does not support the court's decision to appoint Mr. DiMaggio as guardian.

■ Our review of the record indicates that the court should have appointed Mrs. Storz as guardian. As Carolyn's mother, Mrs. Storz has had care and control of Carolyn most of her life. Mrs. Storz has visited Carolyn virtually every day during her hospitalization, and has helped Carolyn through her rehabilitation. Mrs. Storz and

Mrs. Sylvester have made plans to care for Carolyn at Mrs. Sylvester's home, and the probate court acknowledged that adequate care could be given in a home care setting by family members.

The only other petition for guardianship was filed by Craig Brown, Carolyn's husband. The evidence established, however, that he was a habitual drunkard and thus unqualified to act as guardian under section 475.055.2. Craig Brown admitted that he has been an alcoholic for at least two years, and that he was drunk and disorderly at the hospital only two weeks prior to the hearing. This evidence was sufficient to disqualify him as guardian. We thus hold that the probate court erred in appointing Mr. DiMaggio as guardian. Mrs. Storz was qualified to act as guardian and should have been appointed.

■ The trial court's appointment of Mr. DiMaggio as conservator of Carolyn's estate was, on the other hand, supported by substantial evidence. The evidence indicates that a lawsuit has been or will be filed on Carolyn's behalf to recover damages against St. Luke's and the treating physicians. Given the lack of business ability demonstrated by Mrs. Storz and Craig Brown, the appointment of a third party as conservator was necessary to ensure that this action is properly pursued in accordance with Carolyn's best interests. Accordingly, we hold that the trial court did not err in appointing Mr. DiMaggio as conservator.

We next consider the two points raised on appeal by cross-petitioner, Craig Brown. His first point contains two subpoints. In his first subpoint, he repeats petitioners' argument that Mr. DiMaggio's appointment is unlawful because he did not file a petition for guardianship or conservatorship. For the reasons stated above, this subpoint is denied. In his second subpoint, cross-petitioner argues that Mr. DiMaggio is unqualified to act as guardian or conservator because he did not file a consent to act, as required by section 475.055.2. The record on appeal, however, contains a copy of Mr. DiMaggio's consent to act as guardi-

an and conservator, filed with the probate court on April 3, 1985. Accordingly, this subpoint is also denied.

In his second point on appeal, cross-petitioner argues that Mr. DiMaggio's appointment was against the weight of the evidence. This point contains three subpoints. Cross-petitioner first contends that the trial court erred in failing to make specific findings of fact, although such findings were allegedly requested. The record, however, is devoid of any request by any party for specific findings of fact. The probate judge did indicate, at the conclusion of the hearing, that he would probably draft his own "findings and conclusions." The judge did in fact make the written findings required under the probate code. His statement that he would probably make such findings did not, however, obviate the need for a party to make a formal request if it desired specific findings of fact and conclusions of law. This subpoint is thus denied.

In his second subpoint, cross-petitioner contends that the probate court did not consider the statutory preference in favor of blood relatives in appointing Mr. DiMaggio. The application of this standard has been fully discussed above, and this subpoint is accordingly denied.

In his final subpoint, cross-petitioner argues that he was qualified to serve as guardian and conservator because the evidence does not support a finding that he was a "habitual drunkard" under section 475.055.2. As discussed above, such a finding is in fact supported by substantial evidence in the record. This subpoint is accordingly denied.

The judgment is affirmed as to Mr. DiMaggio's appointment as conservator, but is reversed as to his appointment as guardian. We therefore remand this action to the trial court for appointment of Mrs. Storz as guardian.

KAROHL, P.J., and SIMON, J., concur.