In the Matter of Roland P. WEISSINGER, Alleged Disabled Person.

Petition of Patricia WALLACE.

No. 51760.

Missouri Court of Appeals, Eastern District, Southern Division.

Nov. 25, 1986.

John P. Bradshaw, Cape Girardeau, for appellant.

David Beeson, Michael L. Jackson, Jackson, for respondent.

REINHARD, Judge.

Roland Weissinger appeals from an order declaring him a disabled person and appointing Patricia Wallace conservator of his estate. We affirm in part and reverse and remand in part.

■ Mrs. Wallace filed a petition for the appointment of a guardian and conservator for Mr. Weissinger, alleging that he was incapacitated and disabled within the mean-

ing of § 475.010, RSMo Cum.Supp.1984. After counsel was appointed to represent Mr. Weissinger as guardian ad litem, a response was filed denying the allegations contained in the petition and expressing objections to petitioner's serving as guardian or conservator. Mr. Weissinger was given notice of his rights under § 475.075, RSMo Cum.Supp.1984, including his right to a trial by jury. No request was made for a jury trial; however, neither Mr. Weissinger nor his counsel waived his right to a jury trial affirmatively and on the record.[1] Trial proceeded before the court and several witnesses testified, including Mr. Weissinger.

The evidence indicated that Mr. Weissinger is an 81–year-old man who has, for the most part, lived alone since the death of his wife approximately two years prior to the trial. The late Mrs. Weissinger's will provided that most of her property was to be placed in a trust for the benefit of Mr. Weissinger during his lifetime. Mrs. Wallace, who apparently was Mrs. Weissinger's niece, is the trustee, as well as one of the remaindermen under the trust.[2] The trust res consists principally of some Certificates of Deposit and one-half interests in certain real estate owned jointly with Mr. Weissinger, including 30 acres of farmland near Mr. Weissinger's residence, two unimproved lots behind his home, and two rental houses in Cape Girardeau. The medical evidence indicated that Mr. Weissinger has high blood pressure and underwent surgery in July of 1985. In 1985 he went through a period of confusion during which he was hospitalized for mild uremia. His physician testified that Mr. Weissinger's general health is now better, and his only long term medical problem is hypertension. He also stated that Mr. Weissinger "probably would have a great deal of

---

1. Mr. Weissinger filed an addendum to his brief in which he brought to our attention the Missouri Supreme Court's recent decision in *In re Link*, 713 S.W.2d 487 (Mo. banc 1986). There the court held: "§ 475.075.8 requires that the right to a jury trial [in a disability or incapacity proceeding] be waived affirmatively, on the record, and in a fashion similar to waiver under Criminal Rule 27.01." We believe the rule an-

nounced in *Link* was procedural and prospective only; therefore, we decline to apply it to this case, in which the hearing was held and notice of appeal was filed prior to July 15, 1986, when the *Link* decision was handed down.

2. According to our computations, Mrs. Wallace has a 1/36 interest in the remainder of the trust.

difficulty in making any complicated computations and would certainly need some help in the management of business affairs or something that would require more abstract thinking."

During the periods of hospitalization and recuperation, Mrs. Wallace has obtained nursing care for Mr. Weissinger. She has also assisted him in the payment of bills and filing of tax returns. The preparation of accurate tax returns has been hampered by Mr. Weissinger's habit of paying some bills in cash and failing to obtain receipts. Mr. Weissinger has trouble at times remembering which bills have been paid and which have not; as a result Mrs. Wallace has been contacted by various creditors of Mr. Weissinger in settling delinquent accounts. On those occasions when Mr. Weissinger makes purchases by check, he has other people fill out the check for him to sign.

Mrs. Wallace also has had problems in accounting for trust assets and performing her duties as trustee because of Mr. Weissinger's financial disorganization. Apparently Mr. Weissinger collects the rent from one of the rental houses somewhat sporadically and from the other on a fairly regular basis; however, he often fails to convey one-half of that income to the trust or inform Mrs. Wallace about what has been collected.

The testimony indicated that Mr. Weissinger has continued to maintain a small farm and raises hogs with the assistance of Orville Oelsen, who is his neighbor, and Paul Ford, a farmer who lives nearby. Mr. Weissinger makes the decisions in regard to his farm, deciding what to feed his livestock and when to sell them. Mr. Weissinger also has made some recent improvements on his residence after obtaining estimates.

In short, the evidence established that Mr. Weissinger needs some assistance in his financial affairs but is generally capable of providing for his daily needs for food, shelter, clothing, and safety. Mr. Weissinger himself admitted that he could use "some help" in taking care of his banking and paying his bills. His attorney stated in summation: "I think that a limited conservatorship would be the ideal solution to this, and if it doesn't work out, it can be remedied later."

Mr. Weissinger expressed a strong desire that Mr. Oelsen serve as conservator if one was appointed. He explained that Mr. Oelsen lived in close proximity to him, and the two men have become good friends. Mr. Oelsen has assisted Mr. Weissinger with errands and chores around his residence, and is often consulted by Mr. Weissinger on financial matters. For the past few months Mr. Oelsen has assisted Mr. Weissinger in paying his bills. Mr. Oelsen testified that he would be willing to serve as conservator. Mr. Oelsen, who is now retired, was in the retail meat business for eighteen years. Mrs. Wallace testified that her main concern is making sure that Mr. Weissinger is taken care of, and that she does not care who is appointed conservator so long as he or she is qualified. Her attorney stated that they had no objection to Mr. Oelsen's appointment, but that Mr. Oelsen must fully understand his duties as conservator and take the proper action regardless of its effect on his relationship with Mr. Weissinger.

After the hearing the court made the following findings of fact:

The Court ... finds that Roland P. Weissinger at the present time is not incapacitated and, therefore, is not in need of a guardian for his person.

The Court further finds that Roland P. Weissinger is unable by reason of *physical and mental condition* to receive and evaluate information or to communicate decisions to such an extent that the said Roland P. Weissinger lacks ability to manage his financial resources, because of his physical condition being somewhat crippled and his ill health due to chemical imbalances and prior surgeries. Further, as his mental capacity is somewhat diminished to the point of the need of a conservator due to age and ill health.

The Court further finds that the said Roland P. Weissinger's financial re-

sources require supervision. Further, said supervision shall be maximum, except he shall be allowed to have a checking account for the farm. The Court further finds that Roland P. Weissinger shall continue to operate said farm and that Paul Ford and Orville Oelson may assist him. Further, Mr. Ford and Mr. Oelson should be able to sign the checks written on the farm account in order to assist Mr. Weissinger if he is unable to do so.

\* \* \* \* \* \*

The court declared Mr. Weissinger a disabled person and appointed Mrs. Wallace conservator of his estate. Mr. Weissinger brought an appeal from the court's order, and, upon Mrs. Wallace's motion, the court appointed her conservator ad litem. Mr. Weissinger also appeals from that order, and the two appeals have been consolidated.[3]

 While it is not clear from his points on appeal, Mr. Weissinger apparently contends that the court erred in appointing a "full" conservator.[4] Insofar as Mr. Weissinger's point relates to the scope of the conservatorship, we find it to be without merit. While the language of the order may indicate that the conservatorship established was "full", not limited, its terms indicate otherwise. Mr. Weissinger was allowed to maintain financial control over his farm operation, a concession which is consistent with the creation of a limited conservatorship as defined in § 475.010. Regardless of its classification, we find the scope of the conservatorship supported by the evidence.

Mr. Weissinger's principal point on appeal is that the court erred in appointing

Mrs. Wallace conservator because, by virtue of her position as trustee and remainderman, there is a conflict between her interests and those of Mr. Weissinger, and because the court failed to follow the provisions of § 475.050(1), RSMo Cum.Supp. 1984, in selecting Mrs. Wallace instead of Mr. Oelsen, who was nominated by Mr. Weissinger. Section 475.050 provides:

> *Before appointing any other person,* organization or corporation as guardian of an incapacitated person, or conservator of a disabled person, *the court shall consider the suitability of appointing any of the following persons who appear to be willing to serve:*
>
> (1) *If the incapacitated or disabled person is, at the time of the hearing, able to make and communicate a reasonable choice, any eligible person* or, with respect to the estate only, any eligible organization or corporation *nominated by him*;
>
> (2) Any eligible person or, with respect to the estate only, any eligible organization or corporation nominated in an instrument in writing signed by the incapacitated or disabled person, and by two witnesses who signed at his request, before the inception of his incapacity or disability, at a time within five years before the hearing when he was able to make and communicate a reasonable choice;
>
> (3) The spouse, parents, adult children, adult brothers and sisters and other close adult relatives of the incapacitated or disabled person and any eligible person or, with respect to the estate only, any eligible organization or corporation, nominated in a duly probated will of such a

---

**3.** In Mrs. Wallace's motion for appointment as conservator ad litem she cited § 472.170, RSMo Cum.Supp.1984, dealing with appeals, and § 475.097. Mrs. Wallace's motion indicated that she desired appointment as conservator ad litem in order to preserve the estate. Since the order here did not operate as a supersedeas, and Mr. Weissinger did not file a supersedeas bond, Mrs. Wallace's motion was not necessary. *See,* § 472.170. However, it appears to us from the record that Mrs. Wallace was appointed conservator ad litem under § 472.170, and § 475.097

is not at issue. Our resolution of this appeal and reversal of her appointment as conservator also terminates her authority to act as conservator ad litem.

**4.** Mr. Weissinger states in his brief: "It is respectfully urged that the order appointing Patricia Wallace conservator be set aside or that the cause be remanded for the appointment of a limited conservator...."

spouse or relative executed within five years before the hearing. (Emphasis ours.)

Section 475.050 was enacted as part of the guardianship code revision of 1983, which constituted a major change in Missouri law. Section 475.075 establishes a "bill of rights" for respondents at incapacity or disability hearings, and the revised code provides for categories of fiduciaries: guardians; conservators; limited guardians; and limited conservators. These categories reflect the new law's emphasis on the "least restrictive environment" principle, which is adopted in § 475.075(10) and defined in § 475.010(9). As stated in *Missouri Guardianship and Trust Law*, § 1.11 (Mo.Bar 1985):

> The principle of least restrictive environment ... means that surrogate assistance must be no more restrictive of civil rights than is necessary for the adequate protection of an individual. It prevents a court or a guardian from imposing on a ward's personal liberty any greater restraint than is necessary in order to prevent the ward from injury and prevents a court or conservator from interfering with the management of the financial resources of the protectee to any greater degree than is necessary to protect those resources.

*Id.*, p. 1–9.

Prior to the 1983 revision, § 475.050 provided: "The spouse of a person adjudged incompetent may be appointed guardian of the person or of the estate, or of both, of the incompetent." Section 475.055 established the qualifications of guardians but did not indicate any order of preference among those willing and qualified to serve. As a matter of common law, courts held that "a relative should be appointed over a stranger as a guardian unless the record discloses dissension in the family, the adverse interest of the relatives and the incompetent, the lack of business ability of the relative, or any other reason whereby a stranger would best serve the interest of the incompetent." *Roots v. Reid*, 555 S.W.2d 54, 57 (Mo.App.1977). *See also In*

*the Matter of Tepen*, 599 S.W.2d 533, 535 (Mo.App.1980). This court-imposed rule recognized the personal relationship between a guardian and ward and reflected common experience, which indicates that a ward would probably prefer that a person close to him be appointed to look after his personal and financial affairs rather than a stranger. It was, in effect, an attempt by the courts to determine which person the ward would choose as guardian if able to make the selection.

The new law, however, consonant with the principle of "least restrictive environment", leaves the selection of a guardian or conservator to the ward whenever possible. We believe that the legislature intended, in enacting § 475.050, to establish a hierarchy in which subsection (1) takes precedence over subsections (2) and (3). Thus, when an incapacitated or disabled person is, at the time of the hearing, able to communicate a reasonable choice, his nominee should be appointed if the nominee is willing to serve, is qualified under § 475.055, and is not unsuitable. Such a conclusion is supported not only by a careful reading of § 475.050, but by § 475.062, which provides that when the alleged disabled person consents to the appointment sought in the petition,

> the court, after appointment of counsel for the alleged disabled person, if satisfied, by interview with the alleged disabled person or otherwise, that the alleged disability does exist, that the disabled person wishes the appointment and has capacity to understand the need for it and make a reasonable choice of conservator and that the person nominated as conservator is suitable, qualified and has or will accept the appointment, *may, without notice or hearing, appoint as conservator of the estate, the person, organization or corporation designated by the disabled person.* (Emphasis ours.)

In addition, it is worth noting that during the legislative session in which the Guardianship Code was revised, the legislature also enacted the Missouri Durable Power

of Attorney Act, §§ 486.550.—486.595., RSMo Cum.Supp.1984, which permits a person to grant a power of attorney extending beyond the time the principal is competent.

 Mrs. Wallace argues that relatives still have preference over strangers absent the particular circumstances set forth in *Roots v. Reid*, 555 S.W.2d at 54, relying on our recent opinion in *Brown v. Storz*, 710 S.W.2d 402 (Mo.App.1986). The *Brown* case involved the appointment of a guardian of the person and a conservator of the estate of Carolyn Storz Brown, who had suffered severe brain damage. The issue in that case was the interpretation to be given § 475.050(3), dealing with the appointment of close relatives. We held that § 475.050(3) did not create an absolute preference for relatives, but was instead a codification of the common law preference and subject to the exceptions noted in *Roots*. However, since Carolyn Brown had not nominated anyone to act as guardian or conservator, § 475.050(1) and § 475.050(2) were not at issue in that case. While, as stated in *Brown*, § 475.050(3) creates a limited preference for relatives, that subsection is subordinate to the preference established in § 475.050(1) and (2) for the protectee's nominee, as we have previously discussed.

While we do not hold that the court is absolutely bound by the choice of the disabled person, if a reasonable choice is made and communicated to the court, the court shall first consider the suitability of appointing the protectee's nominee before proceeding to the consideration of other persons. Here, Mr. Weissinger nominated Mr. Oelsen for appointment as conservator, and the record indicates his choice was reasonable. Oelsen lived across the street from Weissinger, and the two men have been friends for a long time. Furthermore, Oelsen has had experience in business and has assisted Weissinger in financial matters. There is nothing in the record indicating that Mr. Oelsen was an unsuitable choice for conservator or that he was somehow disqualified. Mrs. Wallace and her attorney raised no objection to Oelsen, and she testified that she did not care who served. We therefore believe that the court erred in not appointing Oelsen. In light of our resolution of this point, it is unnecessary for us to consider Mrs. Wallace's alleged conflict of interest.

The order appointing Mrs. Wallace conservator is reversed and the cause remanded to the trial court with instructions to appoint Orville Oelsen as conservator. In the event he does not now choose to serve, the protectee shall be permitted to make a new nomination prior to the court's consideration of another appointment. In all other respects, the judgment of the trial court is affirmed. Respondent's motions which were taken with the case are denied.

Affirmed in part; reversed and remanded in part.

DOWD, P.J., concurs.

CRIST, J., dissents without dissenting opinion.