**In the Matter of Brandy TURN-BOUGH, An Incapacitated Person, Appellant.**

No. ED 77406.

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 5, 2000.

Susan K. Nuckols, Desoto, MO, for Appellant.

Yvette M. Guerra, Paula Hernandez–Johnson, St. Louis, MO, for Respondent.

DRAPER, Judge.

Brandy Turnbough (hereinafter, "Turnbough") appeals from an order declaring her incapacitated and appointing the Jefferson County Public Administrator (hereinafter, "Respondent") as her guardian. Turnbough appeals claiming the court's order was not supported by clear and convincing evidence to support a finding of incapacitation, and the trial court erred in finding the least restrictive environment was a nursing home. We affirm.

Turnbough is a twenty-four year old woman afflicted with cerebral palsy. She is confined to a wheelchair and communicates through a device called a liberator. She resided in an assisted living arrangement at the time of trial. The Department of Mental Health filed a petition alleging Turnbough was afflicted with bipolar disease and mental disabilities such that she should be adjudged incapacitated. The petition further alleged there was no less intrusive alternative to guardianship, continued treatment was needed, and the least restrictive environment for such treatment was a nursing home.

On November 29, 1999, after a bench trial, the Probate Division of the Circuit Court of Jefferson County entered an order declaring Turnbough incapacitated and appointed Respondent as her guardian, but the order did not set forth specific findings of fact. Turnbough appeals.

Review of a court tried case is limited and will not be overturned unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously applies or declares the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Where the trial court makes no specific findings of fact, the reviewing court must assume that all facts were found in accordance with the result reached. *State v. Revels*, 13 S.W.3d 293, 297 (Mo. banc 2000). In weighing the evidence, we accept as true all evidence that is favorable to the prevailing party,

including all inferences reasonably deducible therefrom, and we disregard any contradictory evidence. *In the Matter of Walker,* 875 S.W.2d 147, 151 (Mo.App. E.D.1994). A person petitioning for appointment as a guardian has the burden of proving incapacity by clear and convincing evidence. Section 475.075.7 RSMo (1994)[1]; *In the Matter of Mitchell,* 914 S.W.2d 844, 847 (Mo.App. S.D.1996). This court will set aside a judgment on the grounds that it is against the weight of the evidence only when we have a firm belief that the judgment is wrong. *Id.*

■ Turnbough's first point on appeal claims the trial court erred in finding her incapacitated, in that this finding is against the weight of the evidence. Turnbough admits that she requires services and assistance in her day-to-day activities, but disputes that there is clear and convincing evidence to warrant the appointment of a guardian.

■ Under Section 475.010(6), a guardian is "one appointed by a court to have the care and custody of the person of a minor or of an incapacitated person." Section 475.010(9) defines an incapacitated person as "one who is unable by reason of any physical or mental condition to receive and evaluate information or to communicate decisions to such an extent that one lacks capacity to meet essential requirements for food, clothing, shelter, safety or other care, such that serious physical injury, illness, or disease is likely to occur." Incapacity requires the existence of some physical or mental condition that puts the person at risk. *In the Matter of Nelson,* 891 S.W.2d 181, 184 (Mo.App. W.D.1995). When a person is incapacitated, whether totally or in part, the court may appoint a guardian for the person to oversee the physical needs of that person, either in total or in part, according to the degree of incapacity. *Id.* The determination of whether to appoint a guardian is based on the person's condition at the time of the hearing. *Id.* at 187.

Respondent presented two witnesses at trial: Turnbough's former Department of Mental Health caseworker, who worked with Turnbough from 1993 to 1998, and her current caseworker, Angie McGovern (hereinafter, "McGovern"). They testified that Turnbough has been diagnosed with a variety of disorders which include, but are not limited to: communication disorder, bipolar disorder with psychotic features, severe depression, mental retardation, seizure disorder, congenital quadriplegia, and cerebral palsy. Turnbough experiences mood swings, hallucinations, and hearing a voice suggesting suicide or harm to herself as a result of her bipolar condition. She has been hospitalized three times in the past five years because of her psychiatric condition. They also testified Turnbough is taking several medications, such as mood stabilizers, anti-anxiety drugs, anti-depressants, and antipsychotic medication. Turnbough is unable to administer her medication by herself, cannot articulate which medication she is taking, does not know how much and when to take her medication, and will not take her medication without supervision.

Less than two months before trial, McGovern administered the Missouri Critical Adaptive Behaviors Inventory (hereinafter, "MOCABI") test to Turnbough. MOCABI measures a person's functional limitations in six areas: self-care, receptive and expressive language, learning, mobility, self-direction, and economic self-sufficiency. McGovern testified that Turnbough exhibited substantial functional limitations in each tested area. Turnbough is limited in areas of self-care which include: bathing, dressing, eating, and basic hygiene. Turnbough is also restricted as to language as she is unable to write, has limited communications skills through the use of her liberator, and cannot schedule appointments with doctors. The test further showed it was questionable whether Turnbough

1. All further statutory references are to RSMo (1994) unless otherwise indicated.

could count money or tell time, and her memory skills were weak. Turnbough is unable to operate household equipment, needs help making independent life decisions, and cannot be left alone for a long period of time.

Finally, the caseworkers testified Turnbough made poor decisions as to appropriate persons to serve as her caregivers and where she would like to reside. Turnbough frequently changes her mind about where she wants to live and was residing in an emergency residential placement center at the time of the trial because she refused to return home to her former foster mother. Moreover, Turnbough was involved in an incident in February 1998 where she became upset with her foster mother, left their residence and maneuvered her electric wheelchair in an erratic fashion down a highway in the rain.

Turnbough wants this Court to focus on the other witnesses who testified on her behalf at trial and her own testimony. These witnesses testified that she was able to communicate through a liberator, and she understood and evaluated information on a day-to-day level. Turnbough participated in an assisted living arrangement and attended a program to help her obtain a high school diploma and employment. Turnbough also offered into evidence the deposition of Dr. Milton Freeman (hereinafter, "Dr.Freeman"), a retired clinical psychologist, who had four half-hour sessions with Turnbough approximately a month before trial. Dr. Freeman testified he did not believe Turnbough was disabled, but her actions would confuse most people who did not know her. Dr. Freeman stated he did not understand what purpose the appointment of a guardian would serve since most of the services Turnbough received would continue even after a guardian was appointed. However, Dr. Freeman did not administer any tests, review any school or medical records, did not examine any other documentation, nor did he know which medications Turnbough was taking when he conducted these sessions.

Based on the foregoing, there was clear and convincing evidence for the trial court to find Turnbough incapacitated under Section 475.010(9), in that she is unable by reason of any physical or mental condition to receive and evaluate information or to communicate decisions to such an extent that she lacks capacity to meet essential requirements for food, clothing, shelter, safety or other care such that serious physical injury, illness, or disease is likely to occur.

■ The fact that the trial court did not err in finding Turnbough incapacitated does not end the inquiry in this case. We must also determine whether the trial court correctly applied the requirement of determining the least restrictive environment, *Nelson,* 891 S.W.2d at 187; thus, addressing Turnbough's second and third points on appeal. These points challenge the court's finding that the least restrictive environment for Turnbough was a nursing home, in that Turnbough would still receive services and assistance from various agencies without the appointment of a guardian, thus rendering her partially, not totally, incapacitated. Further, Turnbough asserts if any guardianship is appropriate in her situation, the court should have granted a limited guardianship.

Section 475.075.10 provides, in part:

If the court finds the respondent to be in some degree incapacitated or disabled, or both, the court, in determining the degree of supervision necessary, shall apply the least restrictive environment principle as defined in this chapter and shall not restrict [one's] personal liberty or [one's] freedom to manage financial resources to any greater extent than is necessary to protect [his or her] person and [his or her] financial resources.

Section 475.010(10) states when defining the "least restrictive environment" that there shall be imposed on the personal liberty of the ward only such restraint as

is necessary to prevent [one] from injuring himself [or herself] and others and to provide him [or her] with such care, habilitation and treatment as are appropriate for him [or her] considering [one's] physical and mental condition and financial means. Moreover, Section 475.075.10 further states the trial court shall consider whether the person declared incapacitated may be fully protected by the rendition of temporary protective services provided by private or public agencies, or by the appointment of a guardian or conservator, either in a full or limited capacity.

■ The principle of the least restrictive environment means that surrogate assistance must be no more restrictive of civil rights than is necessary for the adequate protection of an individual. *In the Matter of Weissinger,* 720 S.W.2d 430, 434 (Mo.App. E.D.1986). It prevents a court or a guardian from imposing on a ward's personal liberty any greater restraint than is necessary in order to prevent the ward from injury. *Id.* The *Nelson* court also recognized the importance of "[t]he requirement of the law, together with the requirement that disability be proven by clear and convincing evidence, shows a desire to defer in close cases to the dignity and personhood of the alleged incapacitated or disabled person rather than to take a strict paternalistic approach of utmost security." *Nelson,* 891 S.W.2d at 187.

Turnbough argues she was residing in an assisted living arrangement and attending special programs which would still be available regardless of whether a guardian was appointed. Additionally, she argues the least restrictive environment is not a nursing home, in that she has never resided in a nursing home, except once on an emergency basis. Further, Turnbough states there is conflicting evidence as to the degree to which she is considered mentally disabled, rendering her only partially, as opposed to totally, incapacitated.

Respondent points out the services available to Turnbough are strictly voluntary, and she requires a guardian to en-sure continued utilization of these services. Respondent argues that in the absence of a guardian, Turnbough could stop taking her medication, could live anywhere and with anyone, and no one could interfere with these decisions no matter how detrimental they were to her welfare. Therefore, Respondent claims the appointment of a guardian is the least restrictive means for ensuring her well-being and safety. We agree.

Turnbough's caseworkers testified that she demonstrated poor judgment as to where she wanted to reside and who she wanted to become her caregiver. Turnbough cannot articulate the qualities of a good caregiver and would not be able to screen applicants. Moreover, they testified that Turnbough needs assistance around the clock to perform day-to-day activities, such as shopping, preparing meals, eating, bathing, dressing, and taking her medication on time and in the correct dosage. We must defer to the trial court's assessment of the credibility of the witnesses, and we are not convinced that the judgment of the trial court was wrong in appointing a guardian and finding that the least restrictive environment was a nursing home.

The judgment of the trial court is affirmed.

GARY M. GAERTNER, P.J. and CRAHAN, J., concur.