In the Matter of Eddie Blake SAY, an Incapacitated and Disabled Person.

Maudie COOK and Mary Magdalene McNeely, Petitioners–Appellants,

v.

Duke W. HANEY and Ruth Ann Haney, Intervenors–Respondents.

No. 16525.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 28, 1991.

Christopher J. Miller, Maness & Miller, Doniphan, for petitioners-appellants.

John W. Belew, Swindle, Nunnery & Belew, Doniphan, for intervenors-respondents.

FLANIGAN, Chief Judge.

Maudie Cook and Mary Magdalene McNeely filed a petition in the Probate Division of the Circuit Court of Ripley County, seeking their appointment as guardians of the person and conservators of the estate of Eddie Blake Say, an allegedly incapacitated and disabled person. Maudie Cook is the sister of Eddie. Duke W. Haney and Ruth Ann Haney, his wife, intervened and requested that letters of guardianship and conservatorship be issued jointly to them "as they would be most qualified to care for the person and estate of [Eddie]." Attorney Beth Moutrie was appointed guardian ad litem for Eddie.

The parties waived trial by jury. On June 22, 1989, after an evidentiary hearing, the court entered its order finding that Eddie was incapacitated and disabled. The court denied the petition of Cook and McNeely and ordered that letters of guardianship and conservatorship be issued to the Haneys "upon proper application therefor." The Haneys promptly filed such an application and letters were issued to them. Petitioners Cook and McNeely appeal.

 The order of the trial court denying the petition of appellants and appointing the Haneys as guardians and conservators of Eddie is an appealable order, and appellants have standing to appeal. § 472.170.1; § 472.160.1; *Matter of Conserv. Estate of Moehlenpah*, 763 S.W.2d

249, 255 (Mo.App.1988); *Brown v. Storz*, 710 S.W.2d 402, 405 (Mo.App.1986); *State ex rel. Pope v. Lisle*, 469 S.W.2d 841 (Mo. App.1971).

Section 475.050,[1] at the time of the instant proceedings, read, in pertinent part:

"Before appointing any other person, organization or corporation as guardian of an incapacitated person, or conservator of a disabled person, the court shall consider the suitability of appointing any of the following persons who appear to be willing to serve:

(1) If the incapacitated or disabled person is, at the time of the hearing, able to make and communicate a reasonable choice, any eligible person or, with respect to the estate only, any eligible organization or corporation nominated by him;

(2) ...

(3) The spouse, parents, adult children, adult brothers and sisters and other close adult relatives of the incapacitated or disabled person and any eligible person or, with respect to the estate only, any eligible organization or corporation, nominated in a duly probated will of such a spouse or relative executed within five years before the hearing."

Appellants assert that the trial court erred in denying their petition to serve as guardians and conservators of Eddie and in appointing the Haneys as such because the court failed to comply with § 475.050.1 in that (a) Eddie was not capable, under § 475.050.1(1), of making and communicating a reasonable choice of his own as to the appointment of his guardians and conservators due to his total incapacity and disability as evidenced by the mental evaluation of Dr. Niskey and Eddie's testimony at the trial, and (b) under § 475.050.1(3), Maudie Cook as petitioner was entitled to preference over the Haneys because she is the sister of Eddie and neither of the Haneys is a blood relative of Eddie.

---

1. All references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

In 1989 § 475.050 was amended in two respects. Neither amendment would have applied here.

In the trial court the guardian ad litem supported the position of petitioners-appellants and joined in their request that they be appointed. The Haneys, as respondents in this court, have filed no brief. For the reasons which follow, this court finds merit in the appeal, sets aside the order appointing the Haneys, and remands the cause to the trial court with directions to appoint the petitioners as guardians and conservators of Eddie.

Eddie was born in 1938. Since birth, he has suffered from Down's Syndrome or mongolism. His mother died shortly after his birth and his father died in the 1950's.

Since the death of his mother, Eddie made his home with Ethel McNeely and her husband, Charlie McNeely. "Ethel took Eddie home with her after the funeral." Ethel McNeely was a sister of Eddie's mother. Three of Eddie's siblings, including appellant Maudie Cook, are still living.

After Ethel McNeely died in 1983, Eddie remained in the McNeely home until Charlie McNeely died in 1989, shortly before these proceedings were commenced. Eddie has lived with the Haneys since Charlie's death.

The will of Charlie McNeely devised his "house and two acres" to Mary McNeely [one of the appellants] in trust for the use and benefit of Eddie. Also included in the corpus of that trust was 50 percent of Charlie's residuary estate. The will directed Mary McNeely, as trustee, to expend so much of the principal or income as she, in her sole discretion, determined necessary for the care and maintenance of Eddie. The will permitted the trustee to allow Eddie to reside at the residence. Except for one minor bequest, that part of Charlie's estate which was not placed in Eddie's trust was given to Mary McNeely absolutely. The will was executed on September 10, 1986.

Over the years, Eddie has been a patient of M.R. Barbour, M.D. A report of Dr. Barbour stated:

"At all times Eddie has been accompanied to the office by his guardian, Charlie McNeely. Eddie is a victim of Down Syndrome or Mongolism and has impairment of his mental functions to the point that he is incapable of managing his own affairs. He is capable of considerable work and can manage very simple chores but does not have the capacity to see about his own money matters or other things that require that he be literate. The condition is one that he was born with and there is no likelihood of changing for the better. This condition is going to be life long as far as Eddie is concerned. He, in my opinion, would require a guardian who is able to provide his meals and see that he is clothed and cared for, although he does have capabilities of seeing to his own dressing and probably would be able to do his own cooking. Otherwise, his activity needs supervision by someone with more capabilities mentation wise."

Jayne Niskey, Ph.D., at the request of all the parties and pursuant to an order of the court, examined Eddie on June 1, 1989. Her report stated, in relevant part:

"This patient is suffering from Downs Syndrome or Mongolism. He is not orientated to date, time, and place. He is not able to do even simple mathematics, and has no comprehension of questions that are proposed to him except whether or not he is single or married. He does have a simple comprehension of chores and the concept of work. He is proud to state how he can wash floors and do dishes. He also presented to this therapist a newspaper picture of recent fishing accomplishment. His family members state that he is now in the 'third grade,' but it is the opinion of this therapist that if an achievement test was administered, one would find that he was at pre-school level in the left to right eye movement and basic hand eye coordination. Also in accomplishment of general knowledge, it is the opinion of this therapist that he would be indeed at a much lower level than third grade. He has no comprehension of money in the form of coins or bills. When he is faced with any emotional stress he claims an excruciating pain in his lower back, which family reports as not being substantiated medi-

cally in any of their recent exams, even a trip to the doctor that precise morning.

"The Shipley Institute of Living Scale, a brief I.Q. test, was unable to produce a valid score for this patient. It is the opinion of this therapist that the patient is suffering from:

"DSM III–R 318.10 Severe Mental Retardation

"His communication is grossly impaired, and he has mastered only some key words that explain to people what he is doing. His sentence construction is poor, and is difficult for anyone outside his family to understand exactly what he is saying. He is able to perform simple tasks, but must be under close supervision.

"It is also the opinion of this therapist that this patient is unable to comprehend what exactly a 'trial by jury' is. I explained to him in simple language the concept, but it is my opinion that he is unable to comprehend such.

"It is also the opinion of this therapist that this patient is totally incapacitated and disabled. He is unable to care for himself, nor manage his own finances. It is my opinion that a full guardianship and conservatorship should be established."

The two petitioners and Joe McNeely testified in support of the petition. Duke Haney, Ruth Ann Haney, Charles Keene and Gladys Haney testified in support of appointment of the Haneys. The court and the guardian ad litem interrogated Eddie. The following is a synopsis of the testimony.

Mary McNeely: I live at Fair Dealing, Missouri, and have known Eddie all his life. While Eddie lived with Ethel and Charlie McNeely, Eddie was not able to handle any outside employment. Charlie and Ethel were able to understand enough of his communications to assist him in caring for his physical and personal needs. Eddie was able to bathe and clothe himself and to feed himself. He needed help while preparing food. He was not able to buy food without help. Although Eddie drove a tractor and a truck around the farm area where he lived, Eddie was not able to obtain a driver's license. Over the last five years I have had quite a bit of contact with Eddie. Charlie and Eddie came to visit us a whole lot and I visited in their home. I stayed there with them some, not just a family visit but to do their cooking and washing. At that time I lived about 20 miles from Charlie's house. I frequently stayed for days at a time. Eddie has no property except his social security income and a $5,000 CD. Eddie's social security check is $161. After Charlie died, I moved into Charlie's home at Fair Dealing. I am the executrix of Charlie's estate and trustee of a trust which Charlie established for Eddie in Charlie's will. The assets of Charlie's estate consist of personal property and bank accounts with an aggregate value of $150,000 and the house and lot. Before Charlie died, he asked me to take care of Eddie and I told him I would. Charley wanted me to live in the house and take care of Eddie. That is why I moved into the house after Charlie's estate was opened. Charlie and Eddie had lived in that house since October 1973. I have had prior experience taking care of incapacitated people, including my mother. During the time I spent with Charlie and Eddie in their house, I had no problem dealing with Eddie. Eddie was living with Charlie until Charlie died. The Haneys took Eddie when they found Charlie dead. I can understand Eddie real well. I have not had the opportunity to see and talk with Eddie since then because I can't get close to him. Mr. and Mrs. Haney are keeping me from getting close to Eddie. Since Charlie's death they are just right on one side and one on the other hanging on pretty well.

Joe McNeely: I am Charlie's nephew and the brother of Mary McNeely. I am quite familiar with Charlie and Eddie who was in Charlie's custody. After Ethel died, I saw Charlie four to five times a year up until the very end. Eddie's care was an overriding concern of Charlie and Ethel. Charlie wanted Mary to take care of Eddie because Charlie was leaving his property for Eddie's good. Charlie wanted Mary to take care of Eddie because Mary had taken good care of our mother who died in 1987.

Mary changed her plans for life in order to be here to take care of Eddie because Charlie asked her to do so. Mary and Eddie have been real close friends and it would be in Eddie's best interest if Mary and Maudie were appointed guardians and conservators of Eddie. I do not think the Haneys would be able to devote time to Eddie because they are a young couple and have a life of their own. Eddie and I grew up together as boys.

Maudie Cook: I am Eddie's sister and I live at Perryton, Arkansas.[2] While Eddie was being raised, all of his brothers and sisters consented to his living with Charlie and Ethel. Charlie told me that after he died Mary McNeely would take care of Eddie. Mary moved into Charlie's house after Charlie died. If Mary and I are appointed as guardians and conservators, Mary would stay at the house and take care of Eddie as Charlie planned. As a family member, that is what I want to see happen. I would take Eddie to my home if something happened to Mary. I do not think it would be in Eddie's best interest for the Haneys to be appointed. If Mary was appointed, that is her interest and she has no one else. Her whole attention could be to Eddie. With regard to whether I think the Haneys would not take care of Eddie adequately, I don't like him being around cattle and things like that because Eddie doesn't see danger in doing anything around farm equipment and around cattle. Mary and I could cooperate adequately to provide the court with necessary financial reports and reports on Eddie's care. As Eddie's sister, I am asking that Mary and I be appointed as Eddie's guardians and conservators. I have visited Eddie as often as I can, every three or four months.

Duke Haney: I am 43. My wife Ruth Ann and I live with our two sons, ages 20 and 17, at Briar, Missouri. Charlie McNeely was my great uncle. Ethel and Charlie visited in my home frequently. The day Charlie died, Eddie wanted me to bring over a gallon of milk. I went over there and Eddie was sitting on the front porch.

Eddie said Charlie was in bed. I went in and found him dead. Eddie went home with me that day. I am a self-employed farmer. I do not make Eddie work. I am interested in Eddie's welfare and I think he would be happier and better cared for in my home than elsewhere. My wife feels the same way. Charlie wanted Eddie to be living with me. Eddie needs someone to help him make important decisions.

Ruth Ann Haney: Eddie came to our home to live on the morning of March 27. He has a room of his own. Eddie and I get along great. Eddie seems happy. I would like to keep Eddie in my house. Eddie gets a $51 check from Medicaid. If there were a better place for Eddie, I would want him to have the best place. It's not all roses taking care of Eddie. I am aware that Eddie's sister wants to have her and Mary take care of Eddie as Charlie's will seems to direct. His sister has showed love for Eddie. She came to our home directly after she was notified. Eddie doesn't like Mary and I believe the only reason is that she doesn't hug him. Eddie needs a lot of hugs and love. Aside from the fact that I don't think Mary loves Eddie, there is nothing else.

Charles Keene: I live one-half mile from the Haneys and I know Eddie. Eddie seems to get along well with the Haneys. He seems happy and contented. Eddie appears to be well treated and the Haneys seem to love him.

Gladys Haney: I am the mother of Duke Haney and live 10 miles from Duke's place. I have known Eddie all his life. Charlie McNeely was my uncle. I have seen Eddie from time to time in my son's home. Eddie is the happiest I have ever seen him in his life.

In the presence of the attorneys, but in the absence of the parties, the court and the guardian ad litem questioned Eddie. That 10–page interrogation shows that some of Eddie's responses were inaudible and that he did not know who the judge

---

**2.** Section 475.055.3 provides that a person need not reside in Missouri in order to serve as guardian or conservator unless the court finds that such person, taking into consideration his place of residence, is unable "to effectively perform" the duties of guardian or conservator.

was. Eddie made such statements as the following: "I'll show you a fish. It's right here . . . and got the Holy Ghost, baptized, read my bible . . . got my car keys . . . the truck keys . . . see, got them . . . Charlie's gone."

When the court asked Eddie if he liked Mary McNeely his response was, "No, I don't want them." The following then occurred:

Q. You don't like her?

A. Huh-uh.

Q. How come you don't like her?

A. I don't want to tell you.

Q. Well, what about her don't you like?

A. I like Doug and Ruth.

Later the following occurred:

Q. How about your sister, Maudie?

A. Don't want with her.

Q. You don't like Maudie?

A. Huh-uh.

Appellate review of this nonjury case is governed by the standards set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Moehlenpah*, supra, at 255; *In re Estate of Davis*, 758 S.W.2d 461, 463 (Mo. App.1988); *Matter of Gollaher*, 724 S.W.2d 597, 600 (Mo.App.1986); *Brown v. Storz*, supra, at 403; *Roots v. Reid*, 555 S.W.2d 54, 58 (Mo.App.1977).

The burden was on petitioners to prove Eddie's incapacity or disability by clear and convincing evidence. § 475.075.7; *Moehlenpah*, supra, at 261. The evidence, medical and lay, was sufficient to sustain that burden and to support the trial court's unchallenged findings of incapacity and disability.

Section 475.050.1(1), set forth earlier, deals with the situation where an incapacitated or disabled person is able, at the time of the hearing, to make and communicate a reasonable choice with respect to the person to be appointed as guardian or conservator. That provision is not applicable here, and nothing in the judgment indicates that the trial court relied at all upon it. The medical evidence and all of the testimony, including that of Eddie himself, support the conclusion that Eddie did not possess that ability.

Section 475.050.1(3), set forth earlier, required the court to consider the suitability of appointing Maudie Cook as Eddie's guardian and as his conservator because she is Eddie's sister. *Moehlenpah*, supra, at 265; *Brown v. Storz*, supra, at 405. As pointed out in *Brown*, supra, at 405, prior to the adoption of § 475.050 in 1983, the Probate Code contained no provision concerning preference to be given to a blood relative in the selection of a guardian or conservator. There was, however, case authority supporting such preference.

In *Roots v. Reid*, supra, 555 S.W.2d at 57 the court said:

"[A] relative should be appointed over a stranger as a guardian unless the record discloses dissension in the family, the adverse interest of the relatives and the incompetent, the lack of business ability of the relative, or any other reason whereby a stranger would best serve the interest of the incompetent."

In *Matter of Gollaher*, supra, 724 S.W.2d at 601 the court said: "While preference of appointment is accorded to blood relatives, this preference is not absolute. But § 475.050, indicates the legislature's intent to maintain a preference for the relatives, subject to the exceptions stated in *Roots*." To similar effect see *Matter of Weissinger*, 720 S.W.2d 430, 435 (Mo.App.1986); *Brown v. Storz*, supra, 710 S.W.2d at 405.

Also in *Gollaher* the court said at 601:

"[K]inship and familial ties are regarded by the courts with partiality when the court finds it necessary to appoint a guardian for an incompetent or incapacitated person, and . . . unless there are 'strong grounds' for appointing a stranger, the relative should be appointed. There is even a presumption that the relative by blood is likely to be more solicitous than a stranger for the incompetent's welfare. Hence, it is the 'general practice' to appoint a blood relative as

guardian. Love, concern, affection and consanguinity are important."

The trial court, in its judgment, gave no reason for rejecting the petition of the appellants and selecting the Haneys in their stead. None of the exceptions delineated in *Roots* is supported by the record. Appellant Maudie Cook is Eddie's sister. None of the other parties is a blood relative of Eddie. The record is barren of any dissension between Eddie and Maudie Cook. There was no showing of any adverse interest of Maudie Cook and Eddie. There was no showing of lack of business ability on the part of Maudie, nor the presence of such on the part of the Haneys. Eddie's guardian ad litem recommended the appointment of appellants. In short, the record does not show any reason why appointment of the Haneys would best serve Eddie's interest, and the trial court did not state a reason.

Also significant is the will of Charlie McNeely who was, for all practical purposes, Eddie's father. Charlie made Eddie the principal beneficiary of his substantial estate. Although Eddie's interest was placed in trust, Charlie selected petitioner Mary McNeely as Eddie's trustee. Charlie's house, where Eddie and Mary would reside, is a nice one.

Although the record contains no evidence of any improper motive on the part of the Haneys, the fact is that they took Eddie into their custody prior to Charlie's funeral. Neither of the Haneys challenged the testimony of Mary McNeely that they had isolated Eddie since that time.

This court holds that the trial court's judgment rejecting the petition of appellants and appointing the Haneys is not supported by substantial evidence, is against the weight of the evidence, and constitutes an erroneous application of the law.

That portion of the judgment finding Eddie to be a disabled and incapacitated person is affirmed; that portion of the judgment appointing the Haneys as guardians and conservators of Eddie is set aside; the cause is remanded to the trial court with directions to sustain the petition of appellants to serve as guardians and conservators of Eddie and to take all procedural steps necessary to effectuate the transfer of the care and custody of Eddie and his estate from the former guardians and conservators to appellants as the new appointees. It is so ordered.

HOGAN and SHRUM, JJ., concur.