**Matter of Delores A. COUCH, Appellant,**

v.

**Harold A. COUCH, Robert Couch and Diane Couch, and John L. Bless, Respondents.**

**No. WD 44169.**

Missouri Court of Appeals, Western District.

Dec. 24, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 1992.

Application to Transfer Denied March 24, 1992.

Mark A. Hubbard, Platte City, for appellant.

Larry M. Brummet, Stuart D. Wieland, Kansas City, and John Roger Cady, Platte City, for respondents.

Before LOWENSTEIN, C.J., and FENNER and ULRICH, JJ.

LOWENSTEIN, Chief Judge.

Robert Couch, son of Delores, along with his wife, Diane, filed in the Probate Division of the Platte County Circuit Court to have Delores declared incapacitated under §§ 475.060–.061, RSMo 1986, and for the appointment of a guardian and conservator.

A similar petition was later filed by John Bless, the county's public administrator, alleging Delores was unable to live on her own, needed constant supervision and could not manage her financial resources. A week later Delores' other child, Harold, filed a petition for a limited guardianship of his mother claiming she was partially disabled. He alleged Delores had nominated him as her guardian and conservator under a previously executed durable power of attorney.

After a hearing, the court entered an order finding Delores partially incapacitated physically and mentally to care for her person, and totally incapacitated as to managing her finances. The public administrator was then appointed as a limited guardian and full conservator. It was further noted that the "distrust and competition" between the sons, Harold and Robert, had caused "unusual stress" on their mother. In its first order the court also set aside the durable power of attorney to son Harold executed within months of the hearing, under § 475.050(1)(2), as being within five years of the finding of incapacity. Finally, the court found that Delores needed to continue to live in a supervised atmosphere.

Some two weeks later the court entered an amended order substantially the same as the first. However, the court abandoned it ruling setting aside the durable power of attorney based on it being executed within five years of the hearing. Instead, the amended order contained the specific finding that the power of attorney executed in favor of Harold was entered into at a time when Dolores was "unable to make or communicate a reasonable choice," and therefore "... it would be in the best interest of ... Delores ... to have another person appointed ..." The order then went on to say that whether or not she was incapacitated at the time of execution of the document, "the court still finds that it would be in the best interest of ... Delores ... to have another person appointed ..."

Delores takes this appeal. She was 68 years old in 1989, and in October, 1989, was living in an apartment under "supervised care" in a "residential care facility." She had some $85,000 in CD's and real estate worth $65,000. The chronology of events is as follows:

1. September, 1989—Delores is confused. Harold makes out and signs checks, as gifts, for $6,000 each to himself and Robert on his mother's account.

2. October, 1989—Diane Couch has Delores examined by a psychiatrist because of mental deterioration. Harold manages her financial affairs and puts her in a residential center where she suffers from forgetfulness and severe weight loss.

3. December 26, 1989—Robert and Diane file.

4. January 5, 1990—Delores executes a durable power of attorney in favor of Harold.

5. July 17, 1990—Public administrator files.

6. July 25, 1990—Harold files.

7. October 10, 1990—Hearing in Probate Court.

8. October 22, 1990—Court enters order.

9. November 5, 1990—Court amends order.

As stated earlier, the appeal is taken in the name of Delores, but Harold is the party dissatisfied with the result—he wants to be the conservator and guardian. Delores was represented by private counsel. The sons' petitions and that of the public administrator prayed for declarations of incapacity, a ruling not appealed, nor in any way questioned in this court. This appeal taken by Harold on behalf of Delores seeks to overturn the decision to appoint Bless, and not Harold, as the conservator and guardian. Some five points are raised 1) the court lacked jurisdiction to enter the amended order; 2) the court should have appointed a son instead of the public administrator as guardian and conservator; 3) Delores did not effectively waive the right to remain silent and forgo a jury trial; 4) insufficiency of the clear and convincing evidence to show Delores' incapacity to execute the January 5 durable power to Harold; and, 5) there was nothing to justify termination of the durable power of attorney.

## I.

The first point states the trial court was without jurisdiction to amend its first order. In the initial order of October 22, 1990, the judgment portion appointed the public administrator as conservator of the estate, granted a limited guardianship and revoked the durable power of attorney. In the findings preceding that result the court recognized the execution of power of attorney but found "it was not five [5] years before the inception of her limited incapacity and full disability and, therefore, the court is not required to follow the choice of the guardian ... in accordance with Section 475.050(2)...." That full statute reads:

1. Before appointing any other person, or corporation as guardian of an incapacitated person, or conservator of a disabled person, the court shall consider the suitability of appointing any of the following persons who appear to be willing to serve:

(1) If the incapacitated or disabled person is, at the time of the hearing, able to make and communicate a reasonable choice, any eligible person or, with respect to the estate only, any eligible organization or corporation nominated by him;

(2) Any eligible person or, with respect to the estate only, any eligible organization or corporation, nominated in a durable power of attorney executed by the incapacitated or disabled person and by two witnesses who signed at his request, before the inception of his incapacity or disability, at a time within five years before the hearing when he was able to make and communicate a reasonable choice;

(3) The spouse, parents, adult children, adult brothers and sisters and other close adult relatives of the incapacitated or disabled person and any eligible person or, with respect to the estate only, any eligible organization or corporation, nominated in a duly probated will of such a spouse or relative executed within five years before the hearing.

On November 5, 1990, without notice to Harold, the court entered amended order reaching the same judgment or result as the prior order. However, the findings were changed only to the extent:

... the Durable Power of Attorney was not entered into before the inception of the Respondent's, Delores A. Couch, incapacity or disability, rather at a time when the Respondent, Delores A. Couch, was unable to make or communicate a reasonable choice, the Court has considered the suitability of appointing Petitioner, Harold L. Couch, and finds that it would be in the best interest of the Respondent, Delores A. Couch, to have another person Appointed as her Limited Guardian and Full Conservator.

The Court further finds that whether or not Respondent, Delores A. Couch, was incapacitated or disabled at the time when she entered into the aforementioned Durable Power of Attorney, for her son, Petitioner, Harold L. Couch, the Court still finds that it would be in the best interest of the Respondent, Delores A. Couch, to have another person Appointed as her Limited Guardian and Full Conservator.

The second order reiterated the sibling competition occassioned by Harold and Robert which "caused unusual stress" on Delores.

■ In essence, the first order was based on the power of attorney not being executed five years before incapacity, while the second found the durable power of attorney was not executed before Delores became incapacitated or disabled. The final result is that both judgments were the same, finding it to be in the mother's best interest to have the public administrator appointed.

Rule 75.01 reads in pertinent part:

The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time.

The change in the order was not to correct a clerical error, as allowed by Rule 74.06, and prior notice should have been given to Harold and the other parties. Yet, if literal adherence to Rule 75.01 were given, the second order would be a nullity, as notice, under due process requirements, is a condition precedent to the power to modify. *State ex rel. Kairuz v. Romines*, 806 S.W.2d 451, 454 (Mo.App.1991); *Lacy v. Dalton*, 803 S.W.2d 664, 665 (Mo.App. 1991).

■ The cases pointed to by Harold, *Champ v. Poelker*, 755 S.W.2d 383 (Mo. App.1988), and *Caldwell Paint Mfg. Co. v. Lebeau*, 591 S.W.2d 1 (Mo.App.1979), involve an actual change in the judgment itself. In *Champ*, the trial court amended its order of dismissal without notice to de-fendant, to allow a plaintiff to file a second time, 755 S.W.2d at 386. In *Caldwell*, a default judgment was taken away without notice, 591 S.W.2d at 5. In both these cases, the second act of the trial court without notice was void. Therefore, the better practice here would have been to give Harold notice even though he was denied no substantial right, *Lacy, supra*, nor lost a judgment he had a right to rely upon, *Kairuz, supra*. Yet, if the first order was reinstated, Harold would be no better off than he is now. The point is denied.

II.

■ Relying on § 475.050, *supra*, the contention is made that due to the durable power of attorney with Delores' stated preference, and due to Harold's blood relationship, he should have been appointed instead of the public administrator. The statute is again set out:

Before appointing any other person, organization or corporation as guardian of an incapacitated person, or conservator of a disabled person, the court shall consider the suitability of appointing any of the following persons who appear to be willing to serve:

(1) If the incapacitated or disabled person is, at the time of the hearing, able to make and communicate a reasonable choice, any eligible person or, with respect to the estate only, any eligible organization or corporation nominated by him;

(2) Any eligible person or, with respect to the estate only, any eligible organization or corporation *nominated in an instrument in writing signed by the incapacitated* or disabled person, and by two witnesses who signed at his *request, before the inception of his incapacity or disability, at a time within five years before the hearing when he was able to make and communicate a reasonable choice;*

(3) The spouse, parents, *adult children,* adult brothers and sisters and other close adult relatives of the incapacitated or disabled person *and any eligible person*

or, with respect to the estate only, any eligible organization or corporation, nominated in a duly probated will of such a spouse or relative executed within five years before the hearing. (Emphasis added.)

The order of preference of the three paragraphs of § 475.050 is hierarchial, *Matter of Weissinger*, 720 S.W.2d 430, 434 (Mo.App.1986). The mother's capacity to select and execution of the durable power do not necessarily win the matter for Harold as discussed elsewhere in the opinion. Without a durable power being a factor, the third statutory subsection will not catapult Harold over the public administrator merely because he is a blood relative. In the *Matter of Say*, 804 S.W.2d 435 (Mo.App.1991), following case law prior to the 1983 enactment of § 475.050, states a relative should be appointed over a stranger unless the record shows dissention in the family or any other reason where a stranger could best serve the interest of the incompetent. *Id.* at 440 (citing to *Roots v. Reid*, 555 S.W.2d 54, 57 (Mo.App.1977)). *Roots* was referred to in *In Conservatorship Estate of Moehlenpah*, 763 S.W.2d 249, 265 (Mo.App.1988), where the court held for a bank over children from a prior marriage. Additionally, the *Moehlenpah* court cited evidence of family dissention and the "adverse interests" of the children, *id.* Such is the case here. The court acknowledged the adverse interests of both Harold and Robert, the disharmony they caused, and that through orchestrated gifts they received 10% of the potential estate. The point is denied.

### III.

The appellant argues court error in failing to follow the requirements for hearings on capacity or disability as contained in § 475.075.8, RSMo 1986:

8. The respondent shall have the following rights in addition to those elsewhere specified:

(1) The right to be represented by an attorney;

(2) The right to have a jury trial;

(3) The right to present evidence in his behalf;

(4) The right to cross-examine witnesses who testify against him;

(5) The right to remain silent;

(6) The right to have the hearing opened or closed to the public as he elects;

(7) The right to a hearing conducted in accordance with the rules of evidence in civil proceedings, except as modified by this chapter;

(8) The right to be present at the hearing.

Appellant asserts the right to a jury trial and the right to remain silent were not shown to be effectively waived by Delores or her attorney. The respondents present no quarrel with standing or the presentation of violation of the statutory rights contained in § 475.075 by the attorney who represented Harold Couch, a denominated respondent in this appeal. Also not raised is the adverse effect to Harold's cause of his mother having waived a jury and taken the stand before the judge. Sections 472.-160 and 472.170 address appeals from the probate division. In § 472.170, an appeal may be taken by a petitioner for adjudication, the person alleged to be disabled or a relative, any reputable citizen in the county of hearing, or attorneys for all those described persons.

In any event, the court takes up the contention but refuses to reverse on this point. *In re Link*, 713 S.W.2d 487 (Mo. banc 1986), honed in on the enumerated rights of § 475.075, and their effective waiver. The court called for an affirmative, on the record waiver, similar to such a waiver under criminal trial rules. *Id.* at 495. The opinion discussed the primary purpose of guardianship as protecting "individuals who are not able to care for themselves," *Id.* at 493, and a showing of an intent under § 475.075.8 bolsters the rights of persons to be adjudicated. *Id.* at 495. The court did note the legislature did not intend that all this, "must be done at the expense of the individual's best *interest.*" *Id.* at 495 (emphasis in original). Where (as here) the waiver of statutory rights was made by the attorney for a person who

could not even recognize the attorney, counsel can waive the rights for a client who cannot comprehend the action. *Id.* at 496. In such a case the trial court is instructed to make a record. *Id.* 496–7. The trial court here failed to follow this last procedure.

In *Link* and in *Matter of Jessee,* 744 S.W.2d 514 (Mo.App.1988), the person to be adjudged was not present and no record made vis-a-vis the waivers in question. However, in *In Conservatorship Estate of Moehlenpah,* 763 S.W.2d 249, 259–60 (Mo. App.1988), no specific memorandum summing up and making a determination as required under *Link,* existed. Here, Delores did appear and the trial court had sufficient evidence to have made a determination of an effective waiver of counsel on these rights. Further, such decision was in the best interest of the individual. It would not be in Delores' best interest to send this case back for a formal determination of waiver as required by the statute and *Link.* Trial court oversights will be condoned only in a limited factual scenario such as here, *Moehlenpah,* 763 S.W.2d 249.

## IV.

The last two points relating to the durable power of attorney will be combined. Under Chapter 404 a durable power of attorney, § 404.703(4), created according to § 404.705.1, does not terminate on the incapacity of the principal. The trial court found Delores incapacitated at the time of execution (January 5, 1990), but even if not, there is sufficient evidence it would be in Delores' best interest to have someone other than Harold handle her financial affairs. Although two experts testified as to extensive atrophy of the brain in October, 1981, no direct evidence existed as to incapacity on January 5, 1990. However, from the facts recounted earlier, the court was justified in inferring incapacity to execute the durable power of attorney. The psychiatric examination in October, 1989 was such that Dr. Katf determined she needed a guardian. The abundant testimony of all the children about her activities and the

testimony from the care center employees supported the court's ruling on this point.

Alternatively, when the facts favorable to the ruling are examined, there is no question of the correctness of the court's appointment of the public administrator as guardian and conservator, rather than either of the sons. Section 475.050, RSMo 1986. The ruling here does no violence to the opinion in *Matter of Byrne,* 808 S.W.2d 936 (Mo.App.1991), where the court recognized § 475.050 creates a presumption that the preference shown in the power of attorney executed within five years of the hearing should be judicially followed.

The final point presents the novel argument that under the statutory scheme concerning such durable powers of attorney, that the only way to limit or change such a document is via petition filed by an interested person, and merely filing for a guardianship or conservatorship will not suffice. This argument is rejected out of hand. Section 475.050, *supra,* refers to consideration of such durable powers in making an appointment of a guardian or conservator. This statute specifically refers to making a determination if such a document were made "before the inception of his incapacity or disability." Section 475.050.1(2). Likewise, §§ 404.714 and 404.717 subd. 1(5), give a trial court the ability to see to the best interests of a person who has executed a durable power of attorney. Nowhere is there any legislative intent to limit this type of court action to an instance brought on solely by a petition as proposed by the appellant.

The judgment is affirmed.

FENNER, Judge, dissenting.

I respectfully dissent from the majority opinion herein.

*In re Link,* 713 S.W.2d 487, 496 (Mo. banc 1986) specifically directs that when counsel for a person alleged to be incapacitated or disabled indicates a desire to waive the individual's rights under Section 475.-075.8, RSMo 1986, that the court cannot simply presume that the waiver is authorized or appropriate, but that the trial court

must ascertain from counsel whether the decision is the individual's own choice or the product of counsel's own best judgment. In either event, the trial court is required to determine for itself whether the individual in fact wishes to waive his rights and, if so, whether the individual is capable of making a knowing and intelligent waiver or alternatively whether the individual is so incapacitated or disabled to warrant counsel's action in the individual's behalf. *Id.*

Furthermore, the Missouri Supreme Court has directed that the right to a jury trial in a proceeding of this nature as granted under Section 475.075.8, RSMo 1986, must be waived affirmatively on the record and in the same fashion as under criminal rule 27.01. *Id.* at 495.

In the case at bar, there was no waiver of rights by Delores Couch or by counsel on her behalf and there was no determination made by the court as to whether Delores Couch was capable of making a knowing and intelligent waiver as required by *Link.* Unless and until the Missouri Supreme Court reconsiders its position as expressed in *Link,* trial courts and this court alike are obligated to follow that opinion.

In accordance with *Link,* I believe that this cause should be remanded for a new trial.