Willis Don FARMER, Respondent,

v.

DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.

No. 23004.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 22, 2000.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for appellant.

No appearance for respondent.

CROW, Presiding Judge.

A Fair Grove police patrolman arrested Willis Don Farmer for driving while intoxicated June 17, 1996. The patrolman took Farmer[1] to jail and administered a "breath test" which produced a "reading" of ".186."

The Director of Revenue ("Director") thereafter suspended Farmer's privilege to drive a motor vehicle. § 302.505.[2] The suspension was sustained upon administrative review, § 302.530, whereupon Farmer filed a petition for trial de novo per § 302.535 in the Circuit Court of Greene County.

After hearing evidence, the trial court entered a two-sentence judgment stating:

"The Court finds State has failed in their [sic] burden of proof regarding maintenance of breath analyzer. Judgment for Petitioner."

Director appeals from that judgment. His sole claim of error is:

"The court below erred in setting aside the suspension of [Farmer's] driving privilege on the grounds that [Director] did not meet his burden of proof regarding maintenance of the breath analyzer because [Director] did not bear any such burden, in that [Farmer] did not make a proper and timely objection to the introduction of his test result."

Adjudication of the claim of error requires an account of certain events that occurred at trial.

At the outset, the trial court asked whether there were any "preliminary matters." This dialogue ensued:

"MR. CHENAULT [3]: Well, Your Honor, we have agreed to stipulate to admission of the maintenance report in this matter, which has been labeled as Respondent's Exhibit B.

MR. CHILDRESS [4]: So stipulated, Your Honor.

THE COURT: All right. Maintenance report is received."

Chenault[5] then presented testimony from the patrolman. That testimony included an account of the circumstances surrounding Farmer's arrest and a description of Farmer's performance on some "field sobriety tests" administered by the patrolman.

Upon taking Farmer to jail, the patrolman administered the "breath test" referred to in the first paragraph of this opinion. Asked what instrument he used, the patrolman replied, "It was the Data Master."

The patrolman avowed he filled out a "checklist" and saw Farmer "blow into the machine." The patrolman's testimony continued:

"Q. Did [the Data Master] appear to function normally when he blew into it?

A. Yes, it did.

Q. Did it produce a reading after he blew into it?

A. Yes.

Q. And what was that reading?

MR. CHILDRESS: Your Honor, I'm going to object as to lack of foundation for the admission of that.

MR. CHENAULT: Well, Your Honor, we've already stipulated to the maintenance report coming in. He's testified he's had a Type III permit. He's identified the checklist.

I would further ask ... that you take judicial notice of the Code of State Regulations pertaining to the administration of a breath test ... which, among other things, indicate that the Data Master is

1. For brevity and clarity, this opinion henceforth refers to Mr. Farmer by his surname. No disrespect is intended.

2. References to statutes are to RSMo 1994.

3. Director's lawyer.

4. Farmer's lawyer.

5. As with Farmer, this opinion henceforth refers to the lawyers by their respective surnames. No disrespect is intended.

an approved instrument by the Department of Health; and also contains the operating procedures to be followed when giving the test on the Data Master. I believe that's the extent of the foundation I need to introduce.

THE COURT: Well, what do you have to do, give the store—I don't—I'm not catching it, Childress; so, you're going to have to give the store away, I guess.

MR. CHILDRESS: Your Honor, I'd just like to keep that objection running.

THE COURT: Well, we will overrule the objection. The evidence will come in.

BY MR. CHENAULT:

Q. And what result did you get when you administered the test to Mr. Farmer?

A. .186."

After Chenault finished presenting Director's evidence, Childress moved for a "directed verdict on the admission of the breath test." In support of the motion, Childress pointed out to the trial court that the Data Master printed an "Evidence Ticket" recording the result of Farmer's test. The ticket showed the serial number of the Data Master as 950069. Childress then directed the trial court's attention to Exhibit B (the "maintenance report" received in evidence by stipulation). That exhibit pertained to an instrument bearing serial number 601009.[6]

Recognizing the discrepancy, the trial court mused, "So we don't have a maintenance report?"

Childress answered, "That's correct, Your Honor."

Chenault responded, "I don't care, Your Honor." Explaining that remark, Chenault reminded the trial court that when he (Chenault) asked the patrolman what the test result was, Childress voiced only "a vague objection" about lack of foundation. That objection, said Chenault "was not sufficient to necessitate . . . that maintenance be proven up at all."

The trial court announced it would take the issue "under advisement."

Childress told the trial court that Farmer "has thought about testifying," hence Childress wanted to "reserve the right" to present Farmer's testimony if the trial court denied the motion for "directed verdict."

The trial court thereupon adjourned the hearing.

After receiving written suggestions from Chenault, the trial court entered the judgment set forth earlier in this opinion.

■ One of the cases cited in Director's brief[7] is *Soutee v. Director of Revenue*, 977 S.W.2d 313 (Mo.App. S.D.1998). There, as here, a driver's license was suspended per § 302.505. *Id.* at 314. Upon trial de novo, Director presented evidence regarding a "breathalyzer test." *Id.* When the officer who administered the test was asked about the result, the driver's lawyer said: "I would like to just reserve my right to ask that this testimony be stricken upon the conclusion of all their evidence." *Id.* The officer then testified the that test "indicated a blood alcohol content of .17%." *Id.*

On appeal by Director from a judgment reinstating the license, *id.*, this court held:

"It is incumbent on an objecting party to make the basis of his or her objection reasonably apparent in order to provide the opponent an opportunity to correct

---

**6.** Director's brief, authored by Chenault, candidly admits: "Much to the undersigned counsel's chagrin, [Director] managed to prove that an entirely different instrument [than the one used in Farmer's test] had been maintained."

**7.** Farmer filed no brief. While there is no penalty for that omission, this court must adjudicate Director's claim of error without the benefit of whatever argument, if any, Farmer could have made in support of the trial court's judgment. *Fitzgerald v. Director of Revenue*, 922 S.W.2d 478, 479 n. 3 (Mo. App. S.D.1996).

the error and the court an opportunity to correctly rule the objection. . . .

. . . .

In the instant case, [the driver's] attorney gave no reason for an objection when asking the court to reserve his right to ask that the testimony of the breathalyzer results be stricken. This was insufficient to preserve an objection to the testimony. The attempt to preserve the right to object, being of no avail, was the equivalent of no objection."

*Id.* at 315, 316.

This court reversed the judgment in *Soutee* and reinstated Director's suspension of the license. *Id.* at 316.

Director also cites *Bollinger v. Lohman,* 936 S.W.2d 870 (Mo.App. S.D.1997), another case where Director suspended a driver's license per § 302.505. *Id.* at 871. At trial de novo, all of Director's evidence was received without objection. *Id.* The evidence showed a "BAC DataMaster" revealed the driver had a "blood alcohol concentration by weight" of .15 percent. *Id.*

Nonetheless, the trial court ordered Director to remove the suspension from the driver's record because the instrument used in the test had a six-digit serial number, whereas the maintenance report pertained to an instrument with a five-digit serial number. *Id.*

On appeal by Director, this court acknowledged Director is generally required to prove the instrument used to test a driver's breath has been maintained in compliance with 19 CSR 20–30.031(3). *Id.* at 872. However, explained the opinion:

"While such proof is normally a prerequisite for admission of the result of the test, such proof was unnecessary in the instant case because the test result was received without objection by [the driver]. Therefore, the evidence that the test showed [the driver] had a 'blood alcohol concentration by weight' of .15 percent was properly before the trial

court despite the flaw in Director's proof of compliance[.]"

*Id.* (citation omitted).

This court reversed the judgment in *Bollinger* and remanded the case to the trial court with a directive to enter judgment affirming Director's suspension of the license. *Id.* at 873.

Five days after *Bollinger,* this court decided *Sherrod v. Director of Revenue,* 937 S.W.2d 751 (Mo.App. S.D.1997). There, as in *Bollinger,* all of Director's records (including the evidence ticket printed by the "BAC DataMaster" that tested the driver's breath) were received in evidence without objection. *Id.* at 752. The evidence ticket displayed a different serial number than the maintenance record. *Id.* The trial court held Director failed to prove the DataMaster had been maintained according to CSR requirements. *Id.*

On appeal by Director from a judgment reinstating the license, this court held the "foundational prerequisites" for admission of a "breathalyzer test result" are unnecessary where the result is received in evidence without objection. *Id.* at 752–53. This court reversed the judgment and remanded the case with a directive that the trial court reinstate the suspension. *Id.* at 753.

In *State v. Bartholomew,* 829 S.W.2d 50 (Mo.App. W.D.1992), the accused was convicted of driving while intoxicated. *Id.* at 51. At trial, the court received the result of a "breathalyzer test" in evidence. *Id.* at 53. On appeal, the accused argued there was no testimony that the instrument had a maintenance check at intervals not exceeding 35 days as required by CSR. *Id.*

Emphasizing that the accused failed to object on that ground at trial, the appellate court rejected the claim of error. *Id.* The opinion said:

"The admission of a breathalyzer test result requires detailed proof to lay the proper foundation. Therefore, it is necessary that the objecting party make clear to the court and opposing counsel

in what manner the test was administered improperly. An objection that there was no proper foundation because the ... regulations require a maintenance test every 35 days, would have left no misunderstanding or speculation about the deficiencies in the proof. It is incumbent upon the objecting party to make the basis of his objection reasonably apparent to the court in order to provide the opponent an opportunity to correct the error and the court to correctly rule it."

*Id.* at [5].

■ Childress's objection to the result of the "breath test" in the instant case was "lack of foundation." The objection obviously failed to identify for the trial court the flaw Childress had spotted in Director's proof, i.e., the serial number of the instrument used to test Farmer's breath did not match the serial number of the instrument to which the maintenance report (Exhibit B) pertained. The record demonstrates the trial court had not espied the discrepancy, as the trial court, pondering Childress's objection, remarked, "I'm not catching it, Childress[.]"

Instead of specifying wherein Director's proof was faulty, Childress merely asked "to keep that objection running."

Childress's objection was analogous to one in *Soutee,* 977 S.W.2d at 314 ("I would like to just reserve my right to ask that this testimony be stricken upon the conclusion of all their evidence"), and the one in *Bartholomew,* 829 S.W.2d at 53 ("I would only object to it subject to the machine being proved up later, that the machine was functioning properly before and af-

ter"). Consistent with *Soutee,* 977 S.W.2d at 316, this court holds Childress's inexplicit objection was the equivalent of no objection.

■ Thus, the consequence of Director's failure to present a maintenance report for the instrument that tested Farmer's breath is the same as if the patrolman's testimony about the result had been received in evidence without objection. Under *Bollinger,* 936 S.W.2d at 872, and *Sherrod,* 937 S.W.2d at 753, when evidence of the result of a breath test is received without objection, Director is not required to prove the instrument was maintained in compliance with CSR requirements. Accordingly, this court holds the trial court erred in entering judgment for Farmer on the ground that Director failed in his "burden of proof regarding maintenance of breath analyzer." The judgment must therefore be reversed.

Director concedes Farmer reserved the right to testify if his motion for "directed verdict" was unsuccessful. As this court has found the motion meritless, Farmer is entitled to a remand so he can testify.

The judgment is reversed and this case is remanded to the trial court for further proceedings consistent with this opinion.

PARRISH and SHRUM, JJ., concur.