Kara A. WEBER, Respondent

v.

DIRECTOR OF REVENUE, STATE
OF MISSOURI, Appellant.

No. 25797.

Missouri Court of Appeals,
Southern District,
Division Two.

July 7, 2004.

Jeremiah W. (Jay) Nixon, Atty. Gen.,
Leslie E. McNamara, Jefferson City, MO,
for appellant.

Richard D. Crites, Springfield, MO, for
respondent.

JOHN E. PARRISH, Judge.

The Director of Revenue (the director)
appeals a judgment setting aside the sus-
pension of Kara A. Weber's (petitioner)
driving privileges.  Petitioner's driving

privileges were suspended pursuant to § 302.505[1] following an arrest for driving while intoxicated. Petitioner requested an administrative hearing as permitted by § 302.530.1, at which the suspension was upheld. She thereafter sought trial de novo in the Circuit Court of Greene County in accordance with § 302.535.1. The circuit court entered judgment setting aside petitioner's suspension. The director appeals. This court reverses and remands with directions to reinstate the suspension of petitioner's driving privileges.

■ This case is reviewed pursuant to Rule 84.13(d). "This Court will affirm the trial court's judgment unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the trial court erroneously declares or applies the law." *Verdoorn v. Director of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003) (footnote omitted).

Section 302.550.1 permits the department of revenue to suspend or revoke the driver's license of any person arrested upon probable cause of driving while intoxicated. An aggrieved driver can seek a trial de novo. At the trial the court must determine whether the suspension or revocation is supported by evidence that: (1) the driver was arrested upon probable cause for violating an alcohol-related offense; and (2) the driver's blood alcohol concentration exceeded the legal limit of [the amount specified by § 302.505].[2] *Section 302.535.1.* The "burden of proof" is on the director of revenue to establish grounds for the suspension or revocation by a preponderance of the evidence.[3] *Section 302.535.1.*

*Id.*

The evidence the director presented was the testimony of the arresting officer, Greene County Deputy Sheriff Robert Greene, and the director's Exhibit A, the certified Missouri driver record of petitioner. The director's Exhibit A was admitted in evidence without objection. Officer Greene testified that he observed petitioner's vehicle at approximately 4:40 a.m., June 2, 2002, just north of the city of Springfield in Greene County. The vehicle was traveling without having its headlights turned on. He stopped the vehicle. Petitioner was the only occupant. Her eyes were slightly bloodshot and appeared "a little glassy." He noticed "a very faint odor of intoxicants."

The officer asked petitioner to perform some field sobriety tests. He administered the horizontal gaze nystagmus test that produced clues of the presence of alcohol. Petitioner then successfully performed a "walk-and-turn test" and a "one-leg-stand." The officer followed these tests with a portable breath test that produced a reading of .085 percent blood alcohol content. Officer Greene formed the opinion that petitioner was intoxicated. He advised petitioner that she was under arrest for driving while intoxicated and transported her to the Greene County jail.

---

1. References to statutes are to RSMo 2000.

2. Petitioner was arrested June 2, 2002. The version of § 302.505 then in effect established the applicable blood alcohol content for revocation or suspension as "eight-hundredths of one percent or more by weight."

3. Once the director makes a *prima facie* showing of probable cause of driving while intoxicated, the driver is entitled to present rebuttal evidence to raise a genuine issue of fact regarding the validity of the blood alcohol test results. If the driver chooses to do so, his or her burden is one of production, not persuasion. *Verdoorn, supra,* at 546. The burden of proof remains that of the director. *Id.*

A breath test was administered to petitioner at the jail. The director's Exhibit A included a copy of the breath test results and a narrative report of the arresting officer. Exhibit A reflects that the test produced a finding of .092 percent blood alcohol content.

The trial court found "the officer did not have probable cause to belief [sic] that [petitioner] was driving while under the influence of intoxicating liquors, and that therefore, the order of [the director] was against the weight of the evidence, and was arbitrary and unreasonable, and therefore should be set aside and held for naught." The judgment declared "the order of [the director] of September 27, 2002, ... is hereby set aside and held for naught, and is of no force or effect, and it is further ordered that [the director] shall remove all records concerning the suspension of [petitioner's] driver's license and of any alcohol related traffic offense from the MULES, and shall not report any such information, forthwith and without delay."

*The Judgment*

■ A document denoted "Judgment," signed by the trial judge, was filed in this case July 18, 2003. The record on appeal indicates that thereafter, on August 7, 2003, another document denoted "Judgment," signed by the trial judge, was filed in the case. Both ordered the suspension of petitioner's driving privileges set aside, although the texts of the findings in the documents vary.

A trial court retains control over its judgment during a 30–day period after its entry. Rule 75.01. During that time, it "may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time." *Id.* The second document in this case that was denoted "Judgment" was filed within 30 days following the filing date of the first. The record does not reveal that any notice was given to the parties that the second document would be entered nor were the parties given an opportunity to be heard prior to its entry.

■ Changes to results reached by judgments that occur within the 30–day period provided by Rule 75.01 without providing notice and the opportunity to be heard are invalid. *Brockhoff v. Leary,* 711 S.W.2d 869, 871 (Mo. banc 1986); *Hewitt v. Chicago, Burlington & Quincy R.R. Co.,* 426 S.W.2d 27, 29 (Mo.1968). The second document denominated "Judgment" that was filed in this case did not, however, change the result specified in the first document. As suggested in *Couch v. Couch,* 824 S.W.2d 65, 69 (Mo.App.1991), the better practice would have been for the trial court to give notice to the parties before considering entering the second document. Nevertheless, here, as was the situation in *Couch,* the result reached was the same in both judgments. No substantial right was denied any party. This court concludes, therefore, that the final judgment was that pronounced by the document filed August 7, 2003.

*Issue on Appeal*

■ The director presents one point on appeal. She contends the trial court erred in setting aside the suspension of petitioner's driving privileges because the suspension "was proper in that [the director] established a *prima facie* case under § 302.505 as to both probable cause to believe that [petitioner] was driving under the influence of alcohol and as to driving with a BAC above the legal limit, since her breath test result of .092 came in without objection thereby obviating the need for the Director to establish the foundation, including the fifteen minute waiting period, and [petitioner] presented no evidence

whatsoever, and thus, failed to rebut the prima facie case."

Petitioner's response to the director's claim of error is premised on the assertion that the arresting officer's testimony revealed the officer failed to observe petitioner for 15 minutes prior to administering the breath test as required to assure the test was accurate; that the objection to the admission of the breath test results was timely made in that it occurred as soon as the testimony to which the objection was posed was elicited. The operating procedures for breath analyzer machines prescribed by 19 CSR 25–30.060 include the requirement for a 15–minute observation of the person to be tested. The test report form, the use of which is mandated by the regulation, requires during the 15–minute period that there be "[n]o smoking or oral intake of any material during this time;" that "if vomiting occurs, start over with the 15 minute observation period."

Officer Greene was asked the following questions at trial and gave the following answers:

Q. If you'll look at the top of your alcohol influence report it shows you arrested [petitioner] at 4:52 a.m., correct?

A. Yes.

Q. And it also shows on the evidence ticket for the BAC DataMaster that the test was run at 5:17?

A. Yes.

Q. And you did not wait until you got to the Greene County Sheriff's Department to start the 15–minute observation, true?

A. It would appear so, yes, sir.

Q. Pardon?

A. Yes, sir.

Q. You did?

THE COURT: Yes, you did not wait. Proceed.

[Petitioner's counsel] [4]: Okay.

BY [THE PETITIONER'S COUNSEL]

Q. And when she was riding in the patrol car you could not observe her, correct?

A. Correct.

Q. And you didn't handcuff her, did you, because she was so nice?

A. I don't recall.

Q. You don't know whether during the trip from Norton Road to Greene County Sheriff's Department, whether she ingested mouth lozenges or mouth spray?

A. No.

The director's counsel advised the trial court that he desired to ask further questions of Officer Greene in response to the voir dire inquiry. Officer Greene testified further that petitioner was in his presence the entire 15 minutes immediately prior to taking the breath test. He stated that although he could not see her as she sat in the back of his patrol car, he did not see her intake anything; that he did not see her vomit or belch.

Petitioner's counsel was permitted to inquire further. In response to questions asked, Officer Greene stated it was possible petitioner could have vomited or belched and he would not have known it; that it was possible she could have put something in her mouth.

**4.** The transcript identifies the director's counsel as the person who gave the response and asked the questions immediately thereafter. The response and questions were, based on a review of the entire inquiry, obviously given and asked by petitioner's counsel in his voir dire of the witness.

The director's counsel asked Officer Greene to state the result of the breath test. Counsel for petitioner objected on the basis of lack of foundation. The objection was sustained following which the director's counsel submitted an offer of proof that the test result was .092.[5]

Testimony similar to Officer Greene's was given by an arresting officer in *Testerman v. Director of Revenue*, 31 S.W.3d 473 (Mo.App.2000). The officer stated he was not aware that Ms. Testerman placed anything in her mouth following her arrest and during the course of his transport of her. He added, "I guess there's always a possibility." *Id.* at 481. Following the officer's testimony, Ms. Testerman testified that she had placed a piece of peppermint candy in her mouth after she had been arrested and placed in the arresting officer's police car for transport to the Benton County Sheriff's office where a breath test was administered. She testified that she told him she had a piece of peppermint in her mouth. The officer was asked on cross-examination if Ms. Testerman had made any statement about placing anything in her mouth, "to [his] recollection." He replied, "No, she did not." *Id.*

*Testerman* held that the director's evidence that the breath test results that revealed Ms. Testerman had in excess of the permissible level of alcohol content was sufficient to support the alcohol content requirement of § 302.505. *Testerman* held that this evidence, together with the evidence the arresting officer provided concerning Ms. Testerman's arrest, constituted a *prima facie* case that required suspension of her driver's license.[6]

The director's point on appeal is well taken. A *prima facie* case was made that petitioner drove a motor vehicle while the alcohol concentration in her breath was "eight-hundredths of one percent or more by weight, based on the definition of alcohol concentration in section 302.500" in that the breath test results were in evidence as part of the director's Exhibit A, and Officer Greene's testimony demonstrated probable cause to arrest petitioner for driving while intoxicated. § 302.505.1. Petitioner presented no specific evidence that rebutted the director's *prima facie* case. The director's point is granted. The judgment setting aside the suspension of petitioner's driver's license is reversed. The case is remanded with directions to enter judgment sustaining the director's suspension of petitioner's driver's license.

PREWITT and BATES, JJ., concur.

---

5. The director does not challenge the trial court's ruling that the officer's testimony regarding the test results was inadmissible, but relies on the evidence of the test results included in Exhibit A. This court's review of the testimony is, therefore, limited to ascertaining if petitioner's claim that the arresting officer failed to adhere to the requirement for a 15–minute observation period prevented the director from making a *prima facie* case of the elements prescribed by § 302.505.1 or, if not, whether it otherwise rebutted the *prima facie* case by a preponderance of the evidence.

6. Unlike in this appeal, the petitioner in *Testerman* testified at trial. She testified that she had consumed peppermint candy after her arrest. *Testerman* held that was not sufficient to rebut the *prima facie* case made by the director; that even if the trial court believed her testimony it was not sufficient to establish how long she ingested the candy before the breath test was administered.