James B. MIDDLEMAS, Petitioner–Respondent,

v.

DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent–Appellant.

No. 26112.

Missouri Court of Appeals, Southern District, Division Two.

March 31, 2005.

James B. Middlemas, Harrisonville, pro se.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert E. Carlson, Asst. Atty. Gen., Jefferson City, for appellant.

No brief filed by Respondent.

JEFFREY W. BATES, Chief Judge.

The Director of Revenue ("Director") appeals from a judgment setting aside the administrative suspension of the driver's license of James Middlemas ("Petitioner") after a trial *de novo* in circuit court. The Director contends the trial court erred because she made a *prima facie* case for suspension which Petitioner failed to rebut. We reverse and remand the case with directions to enter a judgment sustaining the Director's suspension of Petitioner's license.

■ The Department of Revenue is authorized to suspend the driver's license of any person "arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight...." § 302.505.1.[1] After an adverse decision from the Department of Revenue, a driver may file a petition for a trial *de novo* in circuit court. § 302.535.1; *Hlavacek v. Director of Revenue*, 129 S.W.3d 374, 377 (Mo.App.2003). The following quotation succinctly summarizes the respective burdens imposed upon the Director and the driver at such a trial:

> In order to make a *prima facie* case for license suspension, the Director is required to show two elements by a preponderance of the evidence. First, the Director must establish that the person was arrested upon probable cause. Second, the Director must show that the person had a blood alcohol concentration of .080 percent at the time of the arrest.... The Director has the burden to present a *prima facie* case. If that threshold is met, the driver is entitled to

present evidence in an attempt to rebut the Director's *prima facie* case. While the burden of production shifts to the driver when the Director establishes a *prima facie* case, the burden of persuasion remains with the Director throughout the proceedings.

*Lawson v. Director of Revenue*, 145 S.W.3d 443, 445–46 (Mo.App.2004) (citations omitted).

■ We review the trial court's judgment after a trial *de novo* pursuant to the familiar standards established by Rule 84.13(d) and *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[2] *Ruth v. Director of Revenue*, 143 S.W.3d 741, 744 (Mo.App.2004). "This Court will affirm the trial court's judgment unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the trial court erroneously declares or applies the law." *Verdoorn v. Director of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003).

■ In determining whether the trial court's judgment is supported by the evidence or is against the weight of the evidence, we defer to the trial court's credibility determinations. *See Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002). It is important to point out, however, that "[i]f the evidence is uncontroverted or admitted so that the real issue is a legal one as to the legal effect of the evidence, then there is no need to defer to the trial court's judgment." *Id.* Furthermore, a trial court is not free to disregard unequivocal and uncontradicted evidence that supports the Director's contentions. *Laney v. Director*

---

1. All references to statutes are to RSMo (2000).

2. All references to rules are to the Missouri Court Rules (2004). *Murphy* interpreted the

provisions of former Rule 73.01(c). The provisions of that rule were transferred, in essentially the same form, to Rule 84.13(d) effective January 1, 2000.

*of Revenue,* 144 S.W.3d 350, 352 (Mo. App.2004); *Spry v. Director of Revenue,* 144 S.W.3d 362, 367 (Mo.App.2004); *Curnutt v. Director of Revenue,* 142 S.W.3d 225, 227 (Mo.App.2004). The standard of review does not allow an appellate court to disregard uncontroverted evidence meeting all elements of the Director's case. *Laney,* 144 S.W.3d at 352.

The record reveals that Petitioner's driver's license was suspended by the Department of Revenue effective December 12, 2002, after an administrative hearing. A petition for trial *de novo* in circuit court was filed by Petitioner that same day.

The trial *de novo* was held on April 29, 2003. The Director's proof was documentary in nature and consisted of 13 pages of certified records from the Department of Revenue.[3] These records included an Incident Report from the Springfield Police Department and an Alcohol Influence Report ("AIR"). The narrative portion of the Incident Report contains the following description of the events that led up to Petitioner's arrest for driving while intoxicated and the suspension of his license:

> While driving in the area of 1800 E Meadowmere, I saw a silver vehicle leave the bar area. I noticed the vehicle drove west from the bar and drove across Glenstone. I saw the vehicle park abnormally (perpendicular to the spaces). I then noticed the vehicle return to the bar area. I followed the vehicle when it left the bar a second time. I noticed the Silver vehicle turn left (south) onto Glenstone. I noticed the vehicle "bounce" from lane divider to

lane divider. The vehicle crossed both the inside/turn lane and the inside/outside S/B lane dividers just north of and south of Glenstone/Sunshine. I turned on my emergency lights at Cherokee/Glenstone. The vehicle immediately careened from the inside S/B line to the Brown Derby parking lot.

> When I walked up to the vehicle, the door opened. I told the driver to close the door. He ignored me. I walked up and told the driver, later identified as James Middlemas, that I was closing the door. I closed the door and told Middlemas to roll down the window (through a small crack in the window). Middlemas stumbled around with the controls for several seconds before finally getting the window down. I introduced myself and explained the reasons for the stop. Middlemas said he was going to his hotel. I noticed Middlemas was slurring heavily and I also noticed a very strong odor of intoxicants from Middlesmas's mouth when he spoke. I asked Middlemas how much he had to drink. Middlemas said, "I had a beer earlier." CPL. R. Schroeder arrived as my back-up officer.

> I asked Middlemas to exit the vehicle to perform some sobriety tests. Middlemas opened the door and almost fell out of the vehicle. I instructed Middlemas to walk to the other side (passenger side) of the vehicle to perform the tests (level debris-free asphalt). Middlemas walked with a heavy stagger and almost fell again. (SEE SFST's ON PAGE 1 OF THE AIR FORM). I arrested Middle-

---

**3.** This packet of documents consisted of: (1) Petitioner's Missouri Driver Record; (2) a citation issued to Petitioner on September 4, 2002, for failing to drive within a single lane; (3) a citation issued to Petitioner on September 4, 2002, for driving while intoxicated; (4) an Alcohol Influence Report; (5) an Incident Report from the Springfield Police Depart-
ment; (6) a BAC DataMaster evidence ticket showing Petitioner had a .244 blood alcohol content; (7) a Datamaster maintenance report; (8) a certificate of analysis for the certified alcohol reference solution; and (9) a notice of suspension issued to Petitioner by the Springfield Police Department.

mas for driving while intoxicated. I handcuffed (D/L) Middlemas and placed him in the rear of my vehicle. CPL Schroeder handled the Tow portion of the arrest. I transported Middlemas to County jail in my patrol unit.

I arrived and escorted Middlemas into the BAC room at the jail. I read Middlemas the Miranda Warning. Middlemas said he understood his rights. I then completed the interview portion of the AIR. I then read Middlemas Implied Consent. Middlemas consented to a breath test. Middlemas submitted a breath sample of 0.244. I issued Middlemas the Notice of Revocation [sic] and 2 summons (DWI and Lane Violation). I booked Middlemas into the jail for DWI.

During the AIR interview, Petitioner admitted that he drank a six-pack of beer and three glasses of wine during a two-hour period while he was at the bar. According to the AIR, Petitioner also was observed for at least 15 minutes before being given the Breathalyzer test. During that period of time, no smoking, vomiting or oral intake of any material occurred. The only objection Petitioner's attorney made to the certified records was to "the Breathalyzer results on the grounds that it was not—Department of Health regulations were not followed." The trial court admitted the records subject to that objection, and the Director rested.

To rebut the Director's case, Petitioner testified that: (1) he had been left alone in the booking room for five to 15 minutes; (2) when the arresting officer returned, he observed Petitioner only six to seven minutes before administering the Breathalyzer test; (3) the officer did not ask Petitioner if he had anything in his mouth; and (4) Petitioner was chewing gum at the scene and still had the gum in his mouth when he took the Breathalyzer test. Petitioner

presented no evidence other than his own testimony. At the conclusion of the hearing, the trial judge took the case under advisement.

On January 22, 2004, the trial court entered its judgment in the cause. The pertinent portion of the judgment stated:

Upon due consideration of the evidence, the Court finds by a preponderance of the evidence that Petitioner was arrested upon probable cause to believe that he had committed an alcohol-related traffic offense, on September 4, 2002, in Greene County, Missouri. The Court further finds that the Petitioner had gum in his mouth at the time of the breath test and that the presence of gum contaminated the results of the blood alcohol test. Therefore, the Court finds that the suspension of Petitioner's driving privileges pursuant to § 302.505.1, RSMo, should be and is hereby set aside.

■ On February 18, 2004, the trial court filed an "Amended Permanent Order and Judgment" which had been prepared by Petitioner's attorney. This document appears to have been executed without giving the Director notice or an opportunity to be heard on the matter. Omitting the caption, title, signature and date lines, the document contained only three sentences:

The court finds The Department of Revenue failed to show that the breathalyzer result was obtained in compliance with regulation 19 CSR 25–30.060, in that the court found the plaintiff was not observed for the 15 minute period. The court relied on the testimony of the plaintiff in making its determination. It is so ordered[.]

This appeal followed.

As a preliminary matter, we first address the Director's contention that the so-

called "Amended Permanent Order and Judgment" entered on February 18, 2004 is not a final judgment which we are authorized to consider in this appeal. We agree.

A circuit court's *de novo* review of the Director's action in suspending a driver's license is civil in nature, and the proceeding is governed by the rules of civil procedure. *St. Pierre v. Director of Revenue*, 39 S.W.3d 576, 579 (Mo.App.2001); *Lacy v. Director of Revenue*, 9 S.W.3d 1, 2 (Mo.App.1999). "As a general rule, appellate courts only have jurisdiction over final judgments." *City of Kansas City v. Woodson*, 130 S.W.3d 7, 10 (Mo.App.2004). To be final and appealable, a judgment must dispose of all claims as to all parties, leaving nothing for future determination. *Id.; see also Sisk v. Union Pacific R.R. Co.*, 138 S.W.3d 799, 801 (Mo.App.2004).

The trial court rendered a final judgment on January 22, 2004 because the judge signed and filed a writing, denominated as a judgment, which disposed of all issues in the case and finally determined the parties' rights. *See* Rule 74.01; *Koppenaal v. Director of Revenue*, 987 S.W.2d 446, 449 (Mo.App.1999). In contrast, the document filed by the trial court on February 18, 2004 was not a final judgment that we have jurisdiction to review because, despite the nomenclature employed, it did not dispose of Petitioner's claim for reinstatement of his driving privileges. *Cf. Weber v. Director of Revenue*, 137 S.W.3d 563, 565 (Mo.App.2004) (holding that an amended judgment could be reviewed because both the original and amended judgments "ordered the suspension of petitioner's driving privileges set aside," although the factual findings in the documents varied). Therefore, we confine our review in this case to the final judgment rendered on January 22, 2004.

In the Director's sole point relied on, she contends the trial court erred in setting aside the suspension of Petitioner's license because she made a *prima facie* case for suspension which Petitioner failed to rebut. Once again, we agree with the Director's contention.

The Director's documentary evidence was received by the trial court, subject only to Petitioner's objection to the Breathalyzer results on the ground that "Department of Health regulations were not followed." This objection was so vague and nonspecific as to amount to no objection at all. *See Krieger v. Director of Revenue*, 14 S.W.3d 697, 701–02 (Mo.App. 2000); *Farmer v. Director of Revenue*, 11 S.W.3d 113, 117 (Mo.App.2000). "It is incumbent upon the objecting party to make the basis of his or her objection reasonably apparent in order to provide the opponent an opportunity to correct the error and the court an opportunity to correctly rule on the objection." *Reed v. Director of Revenue*, 834 S.W.2d 834, 836–37 (Mo.App. 1992). Moreover, we find no indication in the record that the trial judge ever sustained this objection and excluded the blood alcohol test results. Therefore, the objection is deemed overruled, and the Director's evidence is in the record for our consideration. *See Ziegler v. Director of Revenue*, 150 S.W.3d 145, 147 (Mo.App. 2004).

After reviewing the Director's documentary evidence, we find that it was sufficient to establish a *prima facie* case for suspension of Petitioner's license. First, the trial judge found by a preponderance of the evidence that Petitioner was arrested upon probable cause to believe that he had committed an alcohol-related traffic offense. That finding is supported by substantial evidence. Second, the Director produced evidence that Petitioner's blood alcohol concentration

was .244 percent by weight at the time of his arrest. *See Lawson v. Director of Revenue*, 145 S.W.3d 443, 446 (Mo.App. 2004).

Once the Director made a *prima facie* case, it created a presumption that Petitioner was intoxicated. *See Verdoorn v. Director of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003); *Clark v. Director of Revenue*, 132 S.W.3d 272, 275 (Mo.App.2004). Petitioner was then entitled to rebut the Director's *prima facie* case with evidence that his blood alcohol level did not exceed the legal limit. *See Verdoorn*, 119 S.W.3d at 546; *Clark*, 132 S.W.3d at 275. The only rebuttal evidence adduced by Petitioner was his own testimony that he had gum in his mouth when the Breathalyzer test was administered. Based on that testimony, the trial court concluded that "the presence of the gum contaminated the results of the blood alcohol test." There is simply no evidentiary basis for that finding because Petitioner presented no scientific or medical testimony tending to prove that his blood alcohol concentration would have been below the legal limit of .08 percent by weight if he had been given the Breathalyzer test without the presence of gum in his mouth. *See Duing v. Director of Revenue*, 59 S.W.3d 537, 540 (Mo.App.2001) (trial court had no evidentiary basis to assume that chewing tobacco in driver's mouth contaminated the

Breathalyzer test results).[4] Therefore, Petitioner failed to rebut the Director's *prima facie* case. Because the trial court's contrary finding is not supported by substantial evidence, Director's point is granted.

The judgment setting aside the Director's suspension of Petitioner's driver's license is reversed. The case is remanded with directions to enter a judgment sustaining the Director's suspension of Petitioner's license. *See Weber v. Director of Revenue*, 137 S.W.3d 563, 567 (Mo.App. 2004).

PARRISH, P.J., and BARNEY, J., concur.

---

4. In *Duing*, the case was remanded for further proceedings to permit additional evidence to be presented on the limited issue of whether the tobacco in the driver's mouth during the breath analysis test had any effect on its outcome. *Id.* at 540. Judge Hoff dissented from this part of the opinion. In her view, once the Director made a *prima facie* case for suspension, it was the driver's burden to present evidence to rebut this conclusion by a preponderance of the evidence. She did not agree that a remand should occur because "Driver had the opportunity to present such evidence at trial but failed to do so." *Id.* In *Verdoorn*, the Supreme Court of Missouri adopted Judge Hoff's view by holding "a director's *prima facie* case shifts the burden of *production* to the driver to adduce evidence that his blood alcohol level did not exceed the legal limit." *Verdoorn*, 119 S.W.3d at 546 (italics in original). In the case at bar, Petitioner had the opportunity to meet that burden of production by adducing evidence that his blood alcohol level did not exceed the legal limit, but he failed to do so. Under these circumstances, a remand for further evidentiary development of this issue would be inappropriate and unwarranted.